**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pamela JONES, Katresa Marie Johnson,**
**Mark J. Scott, Jr., Defendants–**
**Appellants.**

Nos. 93–8022, 93–8030 and 93–8031.

United States Court of Appeals,
Tenth Circuit.

Jan. 4, 1995.

Joseph D. Welton, Detroit, MI, for Pamela Jones, defendant-appellant.

Cyril C. Hall, Pontiac, MI, for Katresa Marie Johnson, defendant-appellant.

Joseph P. McCaffery (Julia N. Whalen with him on the brief), Chicago, IL, for Mark J. Scott, Jr., defendant-appellant.

John R. Green, Asst. U.S. Atty. (David D. Freudenthal, U.S. Atty., with him, on the brief), Cheyenne, WY, for plaintiff-appellee.

Before SEYMOUR, Chief Judge, ANDERSON, Circuit Judge, and DAUGHERTY, District Judge.*

SEYMOUR, Chief Judge.

Mark Scott, Pamela Jones and Katresa Johnson appeal their convictions for conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. §§ 846 and 841(a)(1), and for possession with intent to distribute over 200 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), and 18 U.S.C. § 2. We affirm the conspiracy and possession convictions of Mr. Scott and Ms.

---

* The Honorable Fred Daugherty, Senior United States District Judge for the Western, Eastern and Northern Districts of Oklahoma, sitting by designation.

Jones and reverse the convictions of Ms. Johnson.

## I.

On March 15, 1992, Wyoming Highway Patrolman Daniel J. Dyer clocked a Lincoln Continental driving 76 miles per hour in a 65 mile per hour zone. Officer Dyer signaled for the car to stop by turning on his overhead lights and headlights. The car did not stop immediately, but instead continued for approximately one mile past an entrance-exit ramp, finally stopping on an overpass where Officer Dyer could not safely approach the driver's side. Before approaching the car, Officer Dyer verified that it was not stolen.

Officer Dyer noted that the car had California license plates and was rented from Budget Rent–A–Car (Budget). There were two occupants, a driver, Pamela Jones, and a passenger, Katresa Johnson. Officer Dyer also observed three small pieces of luggage on the back seat. After admonishing Ms. Jones for speeding, Officer Dyer asked for her driver's license and the rental car agreement. He also inquired about their destination. Ms. Jones replied, "Well, we're just coming from Los Angeles and we're going back to Detroit." Rec., vol. VII, at 145. Ms. Jones also told Officer Dyer that they had flown from Detroit to Los Angeles but, because they ran out of money, decided to drive back to Detroit. Officer Dyer noticed that a Mr. Scott, rather than Ms. Jones, appeared as the renter on the contract. Ms. Jones identified Mr. Scott as her cousin.

Officer Dyer then returned to his car to check the status of Ms. Jones' driver's license. After receiving an ambiguous response from dispatch, Officer Dyer returned to the car and informed Ms. Jones and Ms. Johnson that they would have to wait until dispatch clarified whether the license was suspended. He then checked Ms. Johnson's license, which was valid.

Meanwhile, Officer Dyer became suspicious that the car might be transporting contraband. He described numerous factors which contributed to this suspicion: 1) the car was a large rental automobile; 2) Ms. Jones and Ms. Johnson were driving from Los Angeles to Detroit, two cities associated with high drug usage; 3) Ms. Jones and Ms. Johnson, purportedly returning from a two week vacation in Los Angeles, had purchased one-way plane tickets to Los Angeles and had three, relatively small pieces of luggage in the back seat; 4) Mr. Scott rented the car for their return trip, allegedly because Ms. Jones and Ms. Johnson had run out of money on their vacation; 5) the car did not immediately stop, and when it did, it stopped in an area where it was unsafe for the officer to approach the vehicle from the driver's side; 6) the picture of Ms. Jones appeared more sophisticated on her driver's license; and 7) Ms. Jones was not nervous, suggesting that she may have been stopped under similar circumstances previously. Consequently, Officer Dyer asked Ms. Jones whether there were any drugs in the car. She responded negatively. He then asked, "Well, you don't mind if I took [sic] a quick look in the trunk then, do you?" Rec., vol. VII, at 150. She refused, stating that her teachers had instructed that the police do not have the right to look in vehicles. Officer Dyer was persistent, arguing, "[Y]ou don't want me to think you got something in there, do you?" *Id.* at 151. Ms. Jones firmly resisted his requests.

At this time, dispatch reported that Ms. Jones' license had been suspended. Officer Dyer issued Ms. Jones a citation for driving under suspension and asked Ms. Johnson to drive Ms. Jones to the sheriff's office to post a $220 bond. While en route, Officer Dyer asked the local drug enforcement agents to meet them at the sheriff's office.

Once at the station, Officer Dyer asked Ms. Jones about the contents of the trunk. She claimed that she was carrying new luggage holding clothes. In a separate conversation, Officer Dyer asked Ms. Johnson, "What do you have in the trunk there? Pamela Jones said you had wicker chairs." She replied, "Wicker chairs? Well, whatever she said is what we got in there." Rec., vol. VII, at 155. Ms. Jones made several credit card calls from memory upon arrival at the police station.

Officer William Gallatin, a member of the Wyoming Drug Task Force, informed Ms. Shelly Lucas, a manager in the Los Angeles

Budget office from which the car had been rented, that police stopped the car for speeding, the driver of the vehicle had a suspended license, and the authorized driver, Mr. Scott, was not present when Officer Dyer stopped the car. Ms. Lucas asked police to seize the car on Budget's behalf.

Officer Gallatin also spoke with Ms. Jones. She became visibly nervous after he identified himself as a narcotics agent. During this conversation, Ms. Jones told Officer Gallatin that she and Ms. Johnson had been visiting relatives in Los Angeles for two weeks, that they ran out of money, and that her cousin rented them a car for their return trip. She also claimed to be unemployed.

Officer Gallatin then told Ms. Jones and Ms. Johnson that they were seizing the car and inventorying the contents. Both became visibly upset. Ms. Johnson appeared on the verge of tears. Officer Gallatin then asked if a black suitcase on the back seat belonged to either of them. Both denied ownership. The officers opened the suitcase to discover several "bricks" of cocaine. The police arrested Ms. Jones and Ms. Johnson. The officers subsequently found over 200 kilograms, or 440 pounds, of cocaine in closed luggage in the back seat and trunk of the car.

The government's investigation revealed that Ms. Jones and Ms. Johnson used cash to purchase one-way tickets on Northwest flight 51 for $628 each. They departed from Detroit for Los Angeles at 7:00 p.m. on March 12, 1992. Mr. Scott departed from Detroit for Los Angeles later that evening on Northwest flight 339. He purchased a round-trip ticket on an American Express card for $1,252. Mr. Scott rented the car that Ms. Jones was driving from the Budget Rent–A–Car at LAX Airport on March 12 at 11:56 p.m. He then checked into the Howard Johnson Motel.

At trial, Special Agent Susan Mathison of the Drug Enforcement Administration ("DEA") office in Detroit testified that when contacted by the Wyoming agents, she was involved in an ongoing investigation concerning Mr. Derek Washam and Ms. Jones. As part of this investigation, Agent Mathison placed a pen register on various telephone numbers associated with Derek Washam. A telephone number associated with Ms. Jones appeared repeatedly on the pen register. For example, in a one week period a few days before Ms. Jones trip to Los Angeles, there were eighteen calls between Washam-related numbers and Pamela Jones' number. Mr. Scott's telephone number also appeared on the pen register which revealed four calls between the Washam residence and the Scott residence on March 12, 1992. Mr. Scott called a Washam-related pager number several times between March 7 and March 13, 1992, including three calls from Mr. Scott's room at Howard Johnson's. The address book in Mr. Scott's possession when he was arrested contained the pager number.

The district court denied Ms. Jones' and Ms. Johnson's motion to suppress the evidence seized from the car, concluding that neither defendant had standing to contest the search of the car. A jury convicted Mr. Scott, Ms. Jones, and Ms. Johnson on both the conspiracy and the possession charges. Defendants appeal, arguing insufficient evidence to sustain the convictions, Fourth Amendment violations, Sixth Amendment violations, and various evidentiary errors.

## II.

### SUFFICIENCY OF EVIDENCE

*1. Ms. Johnson*

A. Conspiracy

Ms. Johnson claims that the evidence was insufficient to sustain her conviction for conspiracy to possess cocaine with intent to distribute. We review the sufficiency of the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Chatman*, 994 F.2d 1510, 1514 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993). To support a conspiracy conviction, "the government must show that there was an agreement to violate the law, that the defendant knew the essential objectives of the conspiracy, that the defendant knowingly and voluntarily took part in the

conspiracy, and that the conspirators were interdependent." *United States v. Anderson*, 981 F.2d 1560, 1563 (10th Cir. 1992) (citing *United States v. Evans*, 970 F.2d 663, 668 (10th Cir.1992), *cert. denied*, ––– U.S. –––, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993)). While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and "caution must be taken that the conviction not be obtained 'by piling inference on inference.'" *United States v. Butler*, 494 F.2d 1246, 1252 (10th Cir.1974) (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943)). As we recently stated, an inference is reasonable only if the conclusion flows from logical and probabilistic reasoning: "'If there is an experience of logical probability that an ultimate fact will follow from [sic] a stated narrative of historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.'" *United States v. Jones*, Nos. 93–4240, 94–4030, at 10 (10th Cir. filed _____) (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 895 (3d Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981)). "'A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such [an inference] is infirm because it is not based on the evidence.'" *Id.* (quoting *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir.1987)).

▪ Ms. Johnson was a passenger in a vehicle caught transporting drugs. To meet its burden, the government must prove guilty knowledge: an implicit or explicit agreement to enter into a known conspiracy with a known objective. Mere knowledge that drugs are present in a vehicle, without additional evidence to support a reasonable inference of a knowing agreement to distribute them, is insufficient to sustain a conspiracy conviction. *See United States v. Sanchez–Mata*, 925 F.2d 1166, 1168 (9th Cir.1991). For the reasons set out below, we are persuaded that the government failed to offer sufficient evidence to prove beyond a reasonable doubt the requisite agreement between Ms. Johnson and the other conspirators.

A thorough review of the record reveals that Ms. Johnson was a passenger in a car, driven by her cousin Ms. Jones, which was stopped en route from Los Angeles to Detroit and was carrying over 200 kilograms of cocaine. Ms. Johnson flew to Los Angeles with Ms. Jones on a one-way ticket purchased with cash. The only evidence Officer Dyer offered regarding Ms. Johnson's behavior was a question which we view as a normal response in the context of a roadside stop: "Why don't you just let us go?" Rec., vol. VII, at 152. Ms. Jones responded to Officer Dyer's requests to search the car, and Ms. Jones fabricated the story regarding their two week vacation in Los Angeles. Ms. Johnson remained silent during these discussions. Although Ms. Jones' license was invalid, Ms. Johnson held a valid license, and Officer Dyer ordered Ms. Johnson to drive Ms. Jones to the police station. When Detective Gallatin told Ms. Johnson that they were seizing the car upon Budget's request, she became "nervous" and was "on the verge of crying." Rec., vol. VIII, at 58. Ms. Johnson denied ownership of the piece of luggage in the back seat of the car in which the officers first discovered drugs. Ms. Johnson's personal effects were found on the back seat of the car in another piece of luggage which did not contain any cocaine. None of Ms. Johnson's personal effects were found in the trunk of the car. Nor was Ms. Johnson carrying keys to the car or the trunk of the car when arrested. Upon arrest, Ms. Johnson asked Ms. Jones for a telephone number and a credit card number to complete a phone call. During the inventory of Ms. Johnson's belongings, the police found only $1.44 in her possession. Investigators did not find Ms. Johnson's fingerprints on any of the cocaine bricks.

These facts clearly establish that Ms. Johnson traveled with Ms. Jones and was a passenger when Officer Dyer stopped the car for violating the speed limit. But mere presence, as a passenger, in a car found to be carrying drugs is insufficient to implicate the passenger in the conspiracy. *United States v. Riggins*, 15 F.3d 992, 994 (10th Cir.1994).

Likewise, mere association with conspirators does not support a conspiracy conviction. *Chatman*, 994 F.2d at 1515; *United States v. Evans*, 970 F.2d 663, 669 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993); *United States v. Austin*, 786 F.2d 986, 988 (10th Cir.1986).

From the evidence, no reasonable jury could infer beyond a reasonable doubt that Ms. Johnson knew of the cocaine's presence in the car.[1] There is no evidence, direct or circumstantial, indicating she knew the car contained cocaine or that she participated in a common plan to distribute it. While 200 kilograms is a large amount of cocaine to be carrying in a car, all the cocaine was contained in closed luggage. Neither Officer Dyer nor Officer Gallatin suggested that a discernible smell contributed to their suspicions. Ms. Johnson was not in possession of keys to the car or trunk when arrested, suggesting that she did not have control over the car or the contents of the trunk. Although two bags in the back seat contained cocaine, Ms. Johnson's personal effects were not in either bag, and the cocaine was not in plain view. The only evidence that could raise an inference of knowledge was Ms. Johnson's nervous and upset demeanor when Officer Dyer told her that the car would be seized. However, this is a plausible reaction from even an innocent bystander who had been detained by the police for close to two hours, who had been escorted to the police station, and who had just been told that police would search and seize the car in which she was riding.

■ It may be reasonable to infer from the evidence that Ms. Johnson suspected illegal activity. She flew from Detroit to Los Angeles on a one-way ticket, paid for with cash, presumably by someone else. And Ms. Johnson deferred to Ms. Jones' description of their travel plans and the contents of the trunk. Mere suspicion of illegal activity, however, is insufficient to prove participation in a conspiracy. *Austin*, 786 F.2d at 988–89. One does not become a participant in a con-

spiracy merely by associating with conspirators known to be involved in crime. *Chatman*, 994 F.2d at 1515 (citing *Evans*, 970 F.2d at 669); *United States v. Dickey*, 736 F.2d 571, 585 (10th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). One must agree to participate in order to be convicted for conspiracy.

The key question therefore is the adequacy of the evidence to sustain an inference that Ms. Johnson agreed, either implicitly or explicitly, to enter into a known conspiracy. There is a conspicuous lack of direct or circumstantial evidence supporting an inference of an explicit agreement to participate in the conspiracy. While Mr. Scott and Ms. Jones were linked to the conspiracy through a common denominator, the pen registers showing frequent communication with Derek Washam immediately before and after the March 15 stop, Ms. Johnson was never implicated in such evidence. There is no evidence of Ms. Johnson's presence at any meetings with Mr. Scott and Ms. Jones. Nor is there evidence of Ms. Johnson's participation in drug-related negotiations or transactions.

We must determine whether, absent evidence supporting an inference that Ms. Johnson knew of the cocaine's presence, her passenger status in a vehicle transporting cocaine coupled with the reasonable inference that she suspected illegal activity support an inference that Ms. Johnson implicitly agreed to participate in the conspiracy. We do not believe they do. A survey of cases from other circuits supports our conclusion that insufficient evidence exists to draw the requisite inference that could implicate Ms. Johnson in the conspiracy.

When courts have sustained conspiracy convictions for passengers, an additional piece of evidence *not present in this case* grounded reasonable inferences of an agreement. In *United States v. Carter*, 14 F.3d 1150 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 156, 130 L.Ed.2d 94 (1994), the defendant, a passenger in a van driving from Arkansas and stopped in Memphis, was

---

1. Even evidence showing Ms. Johnson's knowledge that drugs were present in the car would not support the conspiracy conviction. Merely riding in a car with knowledge that it contains

illegal drugs is insufficient evidence to uphold a conspiracy conviction. *United States v. Sanchez–Mata,* 925 F.2d 1166, 1168 (9th Cir.1991).

charged with and convicted of conspiracy after the police found 437 pounds of marijuana in the van. The Sixth Circuit affirmed the passenger's conspiracy conviction because the driver and passenger told conflicting stories, supporting an inference that they were trying to deceive the officer; the passenger repeatedly tried to walk away from the van, suggesting that he was trying to "keep the police from discovering the marijuana;" and the two had been driving together for a considerable amount of time with a very strong odor of marijuana emanating from the van. *Id.* at 1150, 1156–57. From these facts, the Sixth Circuit concluded that the passenger knew of the existence and scope of the conspiracy and actively participated therein. Although in the instant case Ms. Jones and Ms. Johnson did, as in *Carter,* drive together for a considerable length of time, the contraband was odorless. Nor did Ms. Johnson actively try to deceive Officer Dyer or divert his attention. The strongest reasonable inference that we can draw is that Ms. Johnson suspected illegal activity.

The Fifth Circuit has interpreted conflicting statements, frequently combined with nervousness or implausible stories, as sufficient evidence from which to infer a passenger's agreement to participate in a known conspiracy with a known objective. In *United States v. Pineda–Ortuno,* 952 F.2d 98 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992), the border patrol stopped a car in which the defendant was a back seat passenger. When an agent inspected the vehicle, he felt something under the back seat which turned out to be cocaine and a loaded weapon. The Fifth Circuit upheld the passenger's conspiracy conviction given evidence that he told a conflicting story, appeared nervous, hovered aggressively over the officer as he was searching the back seat, shared driving responsibilities, and received payment for driving the car. *Id.* at 101–02; *see also, e.g., United States v. Shabazz,* 993 F.2d 431, 433, 441–42 (5th Cir.1993) (sufficient evidence to sustain possession charges where passenger was owner of car, gave statement conflicting with driver's statement, was nervous, and became anxious when officer began searching the side of car where drugs were found). In the present case, Ms. Johnson never lied to the police. She did not tell any stories that conflicted with those of Ms. Jones. She did not appear nervous or anxious until police informed her at the station of the search and seizure of the rental car. We view her reaction as a natural one for a cross-country traveler who had been detained by the police for close to two hours and who found herself in the custodial environment of a police station with no money and about to lose her mode of transportation.

In another Fifth Circuit case, *United States v. Limones,* 8 F.3d 1004 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1562, 128 L.Ed.2d 209 (1994), the defendant, Mr. Fuentes, was not a passenger in a vehicle transporting cocaine when arrested but had been a passenger in a car involved in drug transactions prior to arrest. The court rejected Mr. Fuentes insufficient-evidence claim because he had been an active participant in drug-related negotiations and transactions: an address book linked Mr. Fuentes to other conspirators; Mr. Fuentes found a buyer for the cocaine and negotiated the sale; and he was to receive $1000 for "the deal." *Id.* at 1009. There is no evidence that Ms. Johnson participated in any negotiations for sale of the cocaine. Nor is there evidence that Ms. Johnson received payment for her participation in any drug dealings. In fact, she only possessed $1.44 when arrested.

The Eighth Circuit, in *United States v. Johnson,* 18 F.3d 641 (8th Cir.1994), found the evidence sufficient to sustain a passenger's conspiracy conviction where the passenger rode over five hundred miles in a car transporting cocaine; the passenger's clothing and personal effects were found in an open bag containing cocaine; and the bag containing the cocaine and the passenger's personal effects also contained two weapons, one of which was in plain view. The Eighth Circuit concluded that "a fact finder could determine that it would be unreasonable for [the driver] to have had Johnson [the passenger] accompany him on a trip to Texas and, more importantly, place three kilograms of cocaine and two firearms in a bag containing Johnson's clothing unless Johnson knew about the cocaine." *Id.* at 647. Although, in

the instant case, Ms. Johnson traveled a significant distance with Ms. Jones, her personal effects were not found in any piece of luggage containing cocaine, all bags holding cocaine were closed, none of the cocaine bricks were visible, and Ms. Johnson had no apparent access to or control over the trunk. Unlike the situation in *Johnson,* there is no evidence here that Ms. Johnson knew or should have known that cocaine was present in the car.

In these cases, evidence of conflicting stories, active attempts to divert officers' attention from the stopped vehicle, participation in drug transactions, or knowledge of and control over drugs, in addition to the defendant's status as a passenger in a vehicle transporting drugs, reasonably supported inferences that the defendant agreed to participate in the conspiracy. None of these factors are present in Ms. Johnson's case. A review of several other circuit court decisions, reversing conspiracy convictions for insufficient evidence on facts more incriminating than ours, provides added support to our conclusion that the evidence here is insufficient to sustain Ms. Johnson's conspiracy conviction.

The Third Circuit, for example, reversed a passenger's conspiracy conviction even though the passenger told police a story inconsistent with the driver's, placed his luggage in the trunk where a suspiciously altered compartment held the drugs, appeared nervous, and removed the keys from the ignition, presumably to prevent the police from searching the trunk. *United States v. Terselich,* 885 F.2d 1094, 1098 (3d Cir.1989). In the instant case, Ms. Johnson did not tell a conflicting story; nor did she attempt to obstruct the officer's access to the trunk.

In arriving at its conclusion in *Terselich,* the Third Circuit relied on *United States v. Cooper,* 567 F.2d 252 (3d Cir.1977), where the court reversed a passenger's conviction despite evidence of phone calls to his residence from the residence of a conspirator. The court concluded that "in the absence of ... *some* evidence that he [passenger] engaged in telephone or other communication of a conspiratorial nature, no factfinder could find beyond a reasonable doubt that Cooper was a member of the ... conspiracy." *Id.* at 254–

55. In *Cooper,* the defendant clearly called and received calls from the home of a known conspirator. Ms. Johnson, on the other hand, was conspicuously absent from the phone records which helped link Mr. Scott and Ms. Jones as co-conspirators.

In *United States v. Rosas–Fuentes,* 970 F.2d 1379 (5th Cir.1992), the passenger asked the police officer whether anything had been found in the car's tank. The police officer responded, " 'Well you tell me,' " and the passenger responded, " 'Well, yes.' " *Id.* at 1381. This conversation, coupled with a nervous demeanor and an implausible explanation for travel plans, provided insufficient evidence to implicate the passenger in a conspiracy. The evidence in our case is less incriminating. Ms. Johnson did not ask Officer Dyer whether anything had been found in the car. In fact, she did not initiate any conversation with Officer Dyer. Ms. Jones, rather than Ms. Johnson, fabricated the story regarding their travel plans.

The Ninth Circuit has also reversed convictions on evidence more inculpatory than the evidence in our case. In *United States v. Penagos,* 823 F.2d 346 (9th Cir.1987), the defendant was not a passenger when arrested, but undercover narcotics agents observed him, prior to arrest, as a passenger in a vehicle involved in drug transactions. In that case, additional evidence that the defendant looked up and down the street while conspirators loaded drugs into a vehicle, placed and received, alongside a clearly implicated conspirator, 45 to 60 minutes of phone calls from a public telephone following what appeared to be a drug-related meeting, and briefly met with two convicted conspirators, was held insufficient to support the defendant's conspiracy conviction. *Id.* at 347–48. In another Ninth Circuit case, drug agents arrested a passenger in a vehicle carrying suspiciously significant amounts of cash. *United States v. Lopez,* 625 F.2d 889 (9th Cir.1980). Although the defendant was present in a house where drug-related negotiations took place, accompanied conspirators to the scene of the drug transaction, and admitted to the arresting officer that he "knew what was going down," the court concluded the evidence was insufficient to sup-

port the conspiracy conviction because there was no clear evidence that the defendant actually *participated* in the negotiations or deliveries. *Id.* at 896. The evidence against Ms. Johnson is much less incriminating than the evidence in *Penagos* and *Lopez.*

Finally, in *United States v. Pena,* 983 F.2d 71 (6th Cir.1993), the passenger was asleep when the police stopped the driver for speeding. The passenger and the driver told the police inconsistent stories about their trip. The evidence also revealed that the passenger had accompanied the driver from Houston to Columbus, was promised an airline ticket from Columbus to Texas, and "felt" that there was probably something illegal going on. Nonetheless, the Sixth Circuit reversed a conviction for aiding and abetting in the possession of cocaine with intent to distribute, concluding that the evidence was insufficient to show that the passenger knew there was cocaine in the car or took any steps to aid in its transportation or delivery.[2] While the facts in our case are somewhat reminiscent of those in *Pena,* the passenger there additionally told a conflicting story. No such evidence has been offered in the case against Ms. Johnson. If the facts in *Pena* are insufficient to support an inference of an implicit agreement, then the less incriminating facts in this case are likewise insufficient to support such an inference.

The latter cases share two characteristics. First, they reverse conspiracy convictions based on insufficient evidence. Second, they do so notwithstanding evidence more incriminating than that in our case. We hold that the evidence here is insufficient to support Ms. Johnson's conspiracy conviction, and we reverse and remand to the district court to vacate the conviction and sentence.

B. Possession of Cocaine with Intent to Distribute

■ Ms. Johnson also challenges her substantive conviction for possession of co-

caine with intent to distribute pursuant to 21 U.S.C. § 841(a)(1). In order to convict a defendant of possession, the government must prove beyond a reasonable doubt that the defendant knowingly possessed cocaine with the specific intent to distribute. *United States v. Hager,* 969 F.2d 883, 888 (10th Cir.) (citing *United States v. Gay,* 774 F.2d 368, 372 (10th Cir.1985), *cert. denied,* —— U.S. ——, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992)). Possession of narcotics may be actual or constructive. A defendant is deemed to have constructive possession of narcotics if the government proves, through direct or circumstantial evidence, knowing "ownership, dominion or control over the narcotics and the premises where the narcotics are found." *Hager,* 969 F.2d at 888.

■ A defendant can also be implicated by aiding and abetting a co-defendant in the possession of cocaine with intent to distribute. 18 U.S.C. § 2. To be guilty of aiding and abetting, a defendant must willfully associate with the criminal venture and aid such venture through affirmative action. *United States v. Esparsen,* 930 F.2d 1461, 1470 (10th Cir.1991) (citing *United States v. Zamora,* 784 F.2d 1025, 1031 (10th Cir.1986), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992)). The government must prove, through direct or circumstantial evidence, more than mere presence at the scene of the crime even if coupled with knowledge that the crime is being committed. *Esparsen,* 930 at 1470. While evidence of "relatively slight moment may warrant a jury's finding of participation," *Zamora,* 784 F.2d at 1031 (quoting *United States v. Garguilo,* 310 F.2d 249 (2d Cir.1962)), a defendant "may not stumble into aiding and abetting liability by inadvertently helping another in a criminal scheme unknown to the defendant." *United States v. Hanson,* 41 F.3d 580, 582 (10th Cir.1994).

**2.** Although *Pena* involves an aiding and abetting conviction while, at the moment, we are interested solely in Ms. Johnson's conspiracy conviction, both crimes require at a minimum that the passenger was a knowing participant. The Sixth Circuit concluded that the evidence was insufficient to support an inference that the passenger knowingly assisted in the possession or transportation of cocaine. *Pena,* 983 F.2d at 73. A similar inference also would be necessary to support a conspiracy conviction. Therefore, the reasoning the Sixth Circuit employed in *Pena* is identical to that it would have embraced had conspiracy been the charge. Evidence insufficient to support the aiding and abetting conviction would likewise be insufficient to support a conspiracy conviction based on the same facts.

■ The lack of evidence to support Ms. Johnson's conspiracy claim is equally dispositive of her claim that the evidence is insufficient to support her conviction on the possession charges. As discussed above, there is no evidence to support, beyond a reasonable doubt, an inference that Ms. Johnson knew of the cocaine's presence. Consequently, actual possession cannot underlie Ms. Johnson's possession conviction. Nor is there sufficient evidence to support an inference of constructive possession. None of Ms. Johnson's personal effects were found in luggage holding cocaine; when arrested, Ms. Johnson was not in possession of keys to the car or trunk; and she was not a renter or authorized driver of the rental car. Finally, there is insufficient evidence to sustain Ms. Johnson's possession conviction with an aiding and abetting argument. There is no evidence that Ms. Johnson knowingly agreed to participate in the conspiracy or willfully furthered the venture through positive action. We therefore hold that the evidence is insufficient to support Ms. Johnson's possession conviction. Because retrial is barred by double jeopardy, *United States v. Daily*, 921 F.2d 994, 1011 (10th Cir.1990), *cert. denied*, 502 U.S. 952, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991); *United States v. Sullivan*, 919 F.2d 1403, 1428 (10th Cir.1990), *cert. denied*, —— U.S. ——, 113 S.Ct. 285, 121 L.Ed.2d 211 (1992); *United States v. Doran*, 882 F.2d 1511, 1526 (10th Cir.1989), we do not address Ms. Johnson's remaining substantive claims.

*2. Mr. Scott*

A. Conspiracy

■ Mr. Scott challenges the sufficiency of the evidence to sustain his conspiracy conviction. The evidence shows that Mr. Scott flew from Detroit to Los Angeles on March 12, 1992, a few hours after Ms. Jones and Ms. Johnson departed for Los Angeles. He rented the car in which police discovered the cocaine. Mr. Scott returned to Detroit on March 15. He lied to Special Agent Barrett in a taped telephone call, claiming that he had returned the rental car on March 13 because the audio-tape player in the car was not functioning correctly. The evidence overwhelmingly shows that Mr. Scott did not

return the car on March 13 and that Budget did not regain physical control of the car before it was stopped on March 15. Furthermore, Agent Barrett testified that an inventory of the car's contents revealed a bag of 42 cassettes, one of which was in the tape player. Mr. Scott was represented by lawyers who had worked for Derek Washam, the object of an ongoing DEA investigation since August 1991. When arrested, Mr. Scott possessed a business card with these lawyers' names and handwritten advice on how to respond in the event of a DEA stop. When Mr. Scott made his first appearance in court, represented by one of Mr. Washam's lawyers, Derek Washam was present in the courtroom. The pen register on Washam-related phone numbers revealed four phone calls from the Washam residence to the Scott residence the day all defendants traveled to Los Angeles. Ms. Jones' residence frequently appeared on the pen register during the same general time period. The room receipt from the Howard Johnson motel indicated several calls to a Washam-related pager number. When arrested, the address book that Mr. Scott was carrying contained the pager number.

This evidence and the reasonable inferences drawn therefrom clearly support Mr. Scott's conspiracy conviction. This conclusion is consistent with our holding in *United States v. Markopoulos*, 848 F.2d 1036 (10th Cir.1988). In that case, the defendant rented the car in which the border patrol discovered 148 pounds of marijuana; traveled to New Mexico prior to the departure of the driver, and made several phone calls from his hotel to the driver. We found this evidence sufficient to sustain Mr. Markopoulos' conviction. *Id.* at 1038, 1040. Mr. Scott flew to Los Angeles and rented the car. Both of these acts furthered the conspiracy's objectives, supporting an inference that Mr. Scott knowingly and voluntarily agreed to participate in the conspiracy. The timing of Mr. Scott's trip to Los Angeles, his rental of a large car, and the lies he told regarding the rental return date support an inference that Mr. Scott knew of the objectives and scope of the conspiracy. Mr. Scott's presence on the pen registers, the increased telephone activity between Washam-related and Scott-related

phone numbers during early to mid-March 1992, and the connections between Mr. Washam's lawyers and Mr. Scott heighten the plausibility of such inferences. His interdependence with the other conspirators, namely Ms. Jones, is self-evident, given Mr. Scott's integral role in renting the car. Accordingly, we affirm Mr. Scott's conspiracy conviction.

### B. Possession of Cocaine with Intent to Distribute

 Mr. Scott also appeals his possession conviction, arguing insufficient evidence. His conviction rests solely on an aiding and abetting theory. Evidence sufficient to support Mr. Scott's conspiracy conviction, including evidence that he knowingly and willfully agreed to participate in the criminal venture and overtly furthered the criminal venture by flying to Los Angeles and renting the car, is also sufficient to support Mr. Scott's possession conviction. Accordingly, we affirm.

### III.

### FOURTH AMENDMENT SEARCH AND SEIZURE

#### 1. Motion to Suppress Seizure of Cocaine

 Ms. Jones appeals the district court's denial of her motion to suppress the cocaine seized from the car. Fourth Amendment rights are personal. *United States v. Rascon,* 922 F.2d 584, 586 (10th Cir.1990), *cert. denied,* 500 U.S. 926, 111 S.Ct. 2037, 114 L.Ed.2d 121 (1991). A district court cannot suppress evidence unless the movant proves that a search implicates *personal* Fourth Amendment interests. *Id.* An illegal search or seizure only harms those with legitimate expectations of privacy in the premises searched. *United States v. Roper,* 918 F.2d 885, 886–87 (10th Cir.1990). Whether a movant has a legitimate expectation of privacy and therefore has standing to contest a particular search is an issue of law that we review *de novo. United States v. Rubio–Rivera,* 917 F.2d 1271 (10th Cir.1990).

 We have held that a defendant in sole possession and control of a car rented by a third party has no standing to challenge a search or seizure of the car. *United States*

*v. Obregon,* 748 F.2d 1371, 1374–75 (10th Cir.1984). The record here reveals that Ms. Jones did not rent the car; Mr. Scott did. Nor was Ms. Jones authorized to drive the car. Although she argues that she was authorized to drive the car as an employee of Your Way, Inc., the alleged corporation on behalf of which Mr. Scott rented the car, we are not persuaded by this argument. Mr. Scott, during a recorded conversation with Agent Barrett, admitted that Your Way, Inc. is "more or less [a] dormant" corporation. Rec., vol. IX, at 239. Ms. Jones told Officer Gallatin that she was unemployed, rec., vol. VIII, at 179, and no one refuted that testimony at trial. Under our holding in *Obregon,* Ms. Jones did not have a legitimate expectation of privacy in the rented car and consequently does not have standing to challenge the search of the car or the seizure of the cocaine therein. We affirm the district court's denial of Ms. Jones' motion to suppress the evidence seized during the search of the rental car.

#### 2. Detention After Initial Stop

 Ms. Jones also claims that her detention after the initial stop constituted a seizure in violation of the Fourth Amendment. She does not contest the validity of her initial stop for speeding. To determine the validity of a roadside detention, we balance the intrusion on Fourth Amendment rights against the importance of the government interests involved. *United States v. Arango,* 912 F.2d 441, 446 (10th Cir.1990) (citing *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)); *cert. denied,* 499 U.S. 924, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991). An ordinary traffic stop is a limited seizure and is more like an investigative *Terry* stop than a custodial arrest. *United States v. Walker,* 933 F.2d 812, 815 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). We therefore assess the reasonableness of traffic stops under the principles set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* the actions of the police must be justified at their inception and reasonably related to the circumstances which originally justified their interference. *Id.* at 20, 88

S.Ct. at 1879. Although we review the district court's factual findings under a clearly erroneous standard, *Walker*, 933 F.2d at 815, the ultimate determination of reasonableness under the Fourth Amendment is a determination of law that we review *de novo, id.* (citing *United States v. Pena*, 920 F.2d 1509, 1513–14 (10th Cir.1990)), *cert. denied,* 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991).

An officer conducting a routine traffic stop may legitimately detain a driver while requesting a driver's license and vehicle registration, running a computer check, and issuing a citation. *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988) (citing *United States v. Gonzalez*, 763 F.2d 1127, 1130 (10th Cir.1985)); *Obregon*, 748 F.2d at 1376. Once the driver produces a valid license and proof that she is entitled to operate the car, the driver must be permitted to proceed. *Guzman*, 864 F.2d at 1519. Subsequent or concurrent detentions for questioning are justified only when the officer has "reasonable suspicion 'of illegal transactions in drugs or of any other serious crime.'" *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 498–99, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion)). "Whether such an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend upon any one factor but on the totality of the circumstances." *United States v. Soto*, 988 F.2d 1548, 1555 (10th Cir.1993).

Officer Dyer detained Ms. Jones for approximately thirty minutes following the original stop for speeding. During that entire time, Officer Dyer awaited a response from dispatch regarding the status of Ms. Jones' license. Dispatch ultimately informed Officer Dyer that Ms. Jones' license was suspended. On the rental contract, Mr. Scott appeared as the authorized driver. Ms. Jones never proved that she was entitled to operate the rental car. According to *Guzman*, an officer may detain a driver until assured that the driver's license is valid and the driver is legitimately operating the vehicle. *Guzman*, 864 F.2d at 1519. Because Officer Dyer never received such assurances, the duration of the detention was justified.

Concurrent with this legitimate investigative detention, however, Officer Dyer questioned Ms. Jones regarding the transportation of contraband. This questioning is justified only if Officer Dyer reasonably suspected that Ms. Jones was transporting drugs. At trial, Officer Dyer identified several factors heightening his suspicion that the car may have been transporting drugs, including the size of the car, the fact that both Los Angeles and Detroit are known for high drug usage, the lack of luggage for an alleged two week trip, Ms. Jones' reluctance to stop the car, the location of the stop, her inability to prove authorization to operate the car, and apparent familiarity with such stops. In *Arango*, an analogous case regarding a traffic stop for speeding, we concluded that the combination of the driver's inability to prove lawful possession of the vehicle and the officer's skepticism regarding the amount of luggage provided reasonable suspicion to justify an inquiry related to the transportation of contraband. *Arango*, 912 F.2d at 447. We have also identified failure to promptly stop an automobile in response to flashing police lights, *United States v. Walraven*, 892 F.2d 972, 975 (10th Cir.1989), and the fact that defendants were traveling from and to known drug areas, *United States v. Espinosa*, 782 F.2d 888, 891 (10th Cir.1986), as factors supporting reasonable suspicion. Given such precedent, and considering the "totality of the circumstances," we conclude that Ms. Jones' further roadside detention for questioning was supported by reasonable suspicion and, therefore, was legitimate.

## IV.

### SIXTH AMENDMENT RIGHT TO COUNSEL

On September 4, 1992, the government filed a motion to disqualify Alvin L. Keel, attorney for Ms. Jones, and Timothy S. Crawford, attorney for Ms. Johnson, arguing that the attorneys' connections with Derek Washam presented an inherent danger of conflict of interest. After a hearing, the district court granted this motion, concluding that continued representation raised "a serious potential conflict of interest." Rec., vol.

V, at 254. The court suspended Mr. Keel and Mr. Crawford, along with their respective local counsel, for ten days and appointed the federal public defender, the assistant public defender, and two local attorneys as interim counsel. On October 5, the court reinstated Mr. Keel and Mr. Crawford upon Ms. Jones' and Ms. Johnson's request. Defendants proceeded to trial on October 20. Mr. Scott argues that the disqualification of Mr. Crawford and Mr. Keel was unconstitutional because it 1) deprived Ms. Jones and Ms. Johnson of their right to counsel of choice and 2) denied Mr. Scott his right to effective assistance of counsel.

■ Although standing was not raised by either party, we may raise sua sponte the threshold issue of whether Mr. Scott has standing to bring such Sixth Amendment claims. *Alexander v. Anheuser–Busch Cos.*, 990 F.2d 536, 538 (10th Cir.1993). The Sixth Amendment right to counsel is a personal right. *United States v. Partin*, 601 F.2d 1000, 1006 (9th Cir.1979) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)), *cert. denied*, 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980). A defendant thus does not have standing to raise the Sixth Amendment claims of a co-defendant. *Partin*, 601 F.2d at 1006; *see also United States v. Adams*, 1992 WL 279227, at *3 (10th Cir. Oct. 5, 1992). Neither Ms. Jones nor Ms. Johnson challenges the disqualifications on appeal. Their co-defendant, Mr. Scott, may not vicariously assert their rights. We therefore hold that Mr. Scott does not have standing to challenge the disqualification of the attorneys on grounds that the disqualification deprived his co-defendants of their right to counsel of choice.

■ Mr. Scott also contends that his *personal* Sixth Amendment rights were implicated because the disqualification denied him the ability to plan and pursue a joint defense. While Mr. Scott has standing to bring this claim, we nonetheless conclude the claim is meritless. It is undisputed that during the ten-day disqualification period, Mr. Scott's attorneys were free to communicate with Ms. Jones' and Ms. Johnson's appointed interim attorneys, thereby affording Mr. Scott the uninterrupted opportunity for a joint defense. Although the disqualified attorneys were prohibited from communicating with Ms. Jones and Ms. Johnson, they could communicate with their former clients' appointed attorneys "to advise them of the defenses," rec., vol. V, at 258, further assuring the continuity of any joint defense strategy. Moreover, Mr. Scott's argument that he was deprived of a joint defense appears rather vacuous considering that he denied knowing either co-defendant. *See* rec., vol. IX, at 242–43. We hold that Mr. Scott was not denied effective assistance of counsel.

## V.

### EVIDENTIARY ISSUES

#### 1. Hearsay

■ Evidentiary rulings are committed to the discretion of the trial court and are reviewed only for abuse of discretion. *United States v. Zimmerman*, 943 F.2d 1204, 1211 (10th Cir.1991). While we review evidentiary rulings by considering the record as a whole, *Boren v. Sable*, 887 F.2d 1032, 1034 (10th Cir.1989), deference to the trial judge is heightened when reviewing rulings on hearsay questions, *id.* at 1033. This court applies a harmless error standard when reviewing trial courts' rulings on hearsay objections resting solely on the Federal Rules of Evidence. *United States v. Jefferson*, 925 F.2d 1242, 1253–55 (10th Cir.), *cert. denied*, 502 U.S. 884, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991). A harmless error is one that does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect. *Id.* at 1255.

Mr. Scott argues that the district court committed reversible error in admitting evidence over two hearsay objections. The first concerns Ms. Lucas' testimony regarding the "closing information" on Budget's car rental contracts generated on April 14, 1992 (closing contracts). The government offered into evidence Budget's closing contracts which indicated in the "Time in" blank that the Lincoln Continental had been returned on March 13, exactly 24 hours following rental.

The defense did not object, presumably because this broke the link between Mr. Scott's rental of the car and the March 15 stop. However, Ms. Lucas, a manager from the LAX Budget office, explained why the closing contracts may not have accurately reflected the time of the car's return. She testified that, in the normal course of business, a rental contract that is in "limbo," as in the instant case, is frequently closed for revenue purposes "as of one day" in Budget's computer system. Rec., vol. IX, at 67. The defense objected to this evidence on grounds that the "Time in" entry on the closing contracts was self-explanatory. The court overruled this objection because Ms. Lucas, as a manager, could legitimately testify regarding procedures followed in the ordinary course of business. Mr. Scott does not appeal this ruling. However, Ms. Lucas further testified that Mr. Scott called Ms. Harrison, Budget's general manager, at the end of March or the beginning of April, claiming that he had kept the car for only one day. On April 14, following Mr. Scott's phone call, Budget closed the contract. Mr. Scott's attorney objected to Ms. Lucas' testimony of the phone conversation as hearsay. The district court overruled his objection on grounds that Ms. Lucas should be permitted to testify regarding the regular course of business. Mr. Scott now alleges that this ruling constitutes reversible error, arguing that the "Time in" entry is self-evident proof of his returning the car on March 13. We disagree.

■ Even if the district court erroneously admitted testimony of the contents of Mr. Scott's and Ms. Harrison's conversation, we nonetheless conclude that the admission of this testimony was harmless error. The only objectionable hearsay testimony was the substance of the conversation between Ms. Harrison and Mr. Scott. Yet, in a recorded conversation with Agent Barrett, Mr. Scott claimed that he had told Budget that he should have only been charged for one day. Furthermore, Ms. Lucas had already testified, without objection, that Mr. Scott had called at the end of March or the beginning of April, claiming that he had returned the car on March 13. Given such properly admitted testimony, we find it difficult to understand how the admission of this evidence could have harmed Mr. Scott's case.

Furthermore, even though Mr. Scott claimed that he returned the car on March 13 because of a broken tape player, the record contains much evidence, independent of this conversation, which tends to establish that Mr. Scott did not return the car on March 13. Although Ms. Lucas testified that the closing contracts indicated the car was "returned" on March 13, she never testified that Budget regained physical control of the car on March 13. Instead, she explained that the "Time in" entry "doesn't necessarily mean that a car was turned in that particular day." Rec., vol. IX, at 102. Ms. Lucas testified that when Officer Gallatin contacted her on March 15 to inquire whether Ms. Jones or Ms. Johnson had authorization to drive the car, she checked the outstanding contract on the computer which, in contrast to the closing contracts, did not indicate in the "Time-in" blank that the car had been returned. After a thorough review of the inventory sheets and the log sheets, no one at Budget had knowledge of the car being returned to LAX Airport between March 12 and March 15. The "Time in" blank remained empty for a considerable time thereafter. In fact, when the government requested documents at the end of March or the beginning of April, Budget had not yet generated the closing contracts. Mr. Scott's closing contract indicated that he returned the car exactly 24 hours after its rental, further suggesting that the entry was, as Ms. Lucas testified, a bookkeeping convention rather than an accurate reflection of the car's return. Ms. Lucas also testified that it is Budget's policy to accept the customer's alleged date of return for revenue purposes. In the instant case, the closing contracts, giving deference to the customer, reflected Mr. Scott's claim that he returned the car on March 13. The closing contracts nonetheless indicated that Budget assessed a substantial unauthorized drop charge, implying that it never accepted Mr. Scott's allegations that the car was returned to LAX. Ms. Lucas also described, in some detail, the various check-in and inventory procedures, noting that there was no record of Mr. Scott avail-

ing himself of any of these procedures and further noting that if Mr. Scott had returned the car, it would have been extremely difficult for the car to have left the lot absent notice by one of the attendants. Finally, the government played for the jury a time-lapsed video tape of the Budget office and parking lot at LAX on the days in question, and the return of the car was not reflected on the tape. Even absent Ms. Lucas' testimony regarding the phone conversation, a reasonable juror could conclude that the closing contracts' "Time in" entries did not accurately represent when the car was returned to Budget. The admission of this testimony was harmless.

■ Mr. Scott also alleges Alamo Rent–A–Car documents found among Ms. Jones' belongings during the car's inventory were irrelevant hearsay, and their admission is reversible error. These documents referred to several vehicles rented by Derek Washam for an unreasonably long period and returned with unreasonably high mileage. When the government offered these documents into evidence during trial, the defense conceded their authenticity but objected to their relevance. Rec., vol. VIII, at 140–41. The defense did not raise a hearsay objection at trial. *Id.* In general, the failure to object to the introduction of evidence is deemed a waiver of the objection absent plain error. *United States v. McIntyre,* 997 F.2d 687, 699 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994). A plain error is one that is " 'obvious or ... seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Thody,* 978 F.2d 625, 631 (10th Cir.1992) (quoting *United States v. Atkinson,* 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). The admission of the evidence here does not amount to plain error under this standard.

Mr. Scott also challenges the Alamo documents' relevance. The decision to admit or exclude evidence is within the sound discretion of the trial court and is reviewed for an abuse of discretion. *Chatman,* 994 F.2d at 1515. This evidence, like the pen registers admitted without objection, tends to prove Ms. Jones' affiliation with Derek Washam. We hold that the district court did not abuse its discretion in admitting the Alamo documents.

### 2. Display of Cocaine

■ The government displayed over 200 pounds of cocaine during trial. Mr. Scott argues that this evidence was more prejudicial than probative and was cumulative. The government argues that Mr. Scott failed to object on these bases and therefore waived the issue for appeal. A review of the record refutes the government's argument. In anticipation of the display of cocaine, Mr. Scott's attorneys objected to its admission on the grounds that the prejudicial effect of displaying the actual cocaine was more prejudicial than probative. Rec., vol. VIII, at 37. They reiterated this objection when the cocaine was formally offered into evidence and also contended the evidence was cumulative. *Id.* at 77. Evidence notwithstanding an objection under Fed.R.Evid. 403 is reviewed for abuse of discretion.[3] *Whalen v. Unit Rig, Inc.,* 974 F.2d 1248, 1252 (10th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993). Although we have never squarely addressed whether the display of large quantities of cocaine in a drug conspiracy case is more prejudicial than probative, other circuits have held that such decisions are within the sound discretion of the trial court. *See United States v. Gonzalez,* 933 F.2d 417, 426–28 (7th Cir.1991) (trial court did not abuse its discretion in permitting display of 2,248 kilograms of cocaine in drug conspiracy case); *United States v. Arango–Correa,* 851 F.2d 54, 58 (2d Cir.1988) (trial court did not abuse its discretion under Fed.R.Evid. 403 in permitting display of 500 pounds of cocaine in drug conspiracy case); *United States v. Peyro,* 786 F.2d 826, 830 (8th Cir.1986) (trial court did not abuse its discretion in permitting display of 10.5 kilograms of cocaine). We likewise conclude

---

3. Federal Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

that the display of the cocaine was not an abuse of discretion in this case.

### 3. Expert Testimony

■ We review the admission of expert testimony under an abuse of discretion standard. *United States v. Sturmoski,* 971 F.2d 452, 459 (10th Cir.1992) (citing *United States v. Vreeken,* 803 F.2d 1085, 1091 (10th Cir. 1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987)); *United States v. Barbee,* 968 F.2d 1026, 1031 (10th Cir. 1992). During trial, the government asked Special Agent Barrett to estimate the value of a kilogram of cocaine in Wyoming. Mr. Scott's attorney objected to the testimony as irrelevant hearsay. The court overruled these objections. Agent Barrett then testified that the street rate for a kilogram of cocaine in Wyoming in March 1992 was $25,-000. Mr. Scott appeals the admission of this testimony, questioning its relevance and claiming that it is more prejudicial than probative.

We have admitted expert testimony regarding the street value of cocaine. *See, e.g., Fitzgerald v. United States,* 719 F.2d 1069, 1070 (10th Cir.1983) (admission of expert testimony establishing that drugs in questions had aggregate street value of $18,400). Other circuits have held that expert testimony regarding the value of drugs is relevant to prove the drugs were intended for distribution. *See United States v. Tapia–Ortiz,* 23 F.3d 738, 741 (2d Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 206, 130 L.Ed.2d 136 (1994). We therefore hold that the district court did not abuse its discretion in admitting Agent Barrett's testimony.

We REVERSE for insufficient evidence Ms. Johnson's convictions on both the conspiracy and possession counts. We AFFIRM Ms. Jones' and Mr. Scott's convictions on both counts.