**PUBLISH**
**UNITED STATES COURT OF APPEALS**
Filed 10/7/96
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee/Cross-Appellant,

    v.

JAMES D. C. JARAMILLO,

        Defendant-Appellant/
Cross-Appellee.

No. 95-2159, 95-2182

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. CR-94-333JP)**

James P. Moran, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the briefs), Denver, Colorado, appearing for the Appellant/Cross-Appellee.

Paula G. Burnett, Assistant U.S. Attorney (John J. Kelly, United States Attorney, and Mary L. Higgins, Assistant U.S. Attorney, with her on the brief), appearing for the Appellee/Cross-Appellant.

Before TACHA, REAVLEY,* and LUCERO, Circuit Judges.

---

*The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

TACHA, Circuit Judge.

A jury convicted James Jaramillo of 118 counts of Medicare fraud, 95 counts of Medicaid fraud, and 15 counts of filing false claims with the CHAMPUS program. The jury, however, acquitted Jaramillo of one count of conspiracy to file false claims. During the trial, Jaramillo made motion in limine to exclude certain evidence under Federal Rule of Evidence 404(b), but the district court denied the motion. After the trial, Jaramillo moved for a new trial on the ground that there were exhibits in the jury room during deliberations that had not been admitted into evidence. The district court also denied this motion. At sentencing, the trial court found that the loss to the government was $12,573, which reduced the base offense level recommended in the defendant's presentence report by five levels. The court also reduced the base offense level by two levels for acceptance of responsibility. The government objected to both these rulings.

The government and Jaramillo now appeal. Jaramillo contends that the district court erred in denying him a new trial and by admitting certain evidence under Rule 404(b). The government argues that the court incorrectly calculated the loss to the government and erred when it reduced Jaramillo's sentence for acceptance of responsibility. We exercise jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

# BACKGROUND

Jaramillo was a psychiatrist licensed in Albuquerque, New Mexico, who practiced under the name of Medical Institute for Mental Health. Jaramillo was also a staff psychiatrist and part owner of Memorial Hospital, a private psychiatric hospital located in Albuquerque. In 1983, Jaramillo hired Wayne Meyerowitz to provide psychotherapy to Jaramillo's patients. Although Meyerowitz had a masters degree in counseling and a medical degree from the University of Guadalajara in Mexico, he was not licensed to practice medicine in the United States because he had failed the foreign medical graduates examination more than twenty times. As Jaramillo's employee, Meyerowitz had contact with Jaramillo's patients at the hospital, but his credentials there did not include privileges to perform psychotherapy.

Medicare, Medicaid, and CHAMPUS are federally funded health insurance programs. Under the programs' regulations, Jaramillo was permitted to submit claims to these programs because he, as a medical doctor, was an authorized provider of services. On the other hand, Meyerowitz, who was not licensed to practice medicine, was not an authorized provider. Thus, the regulations did not permit Jaramillo to bill for services provided by Meyerowitz if Jaramillo was absent from his office or the hospital. On all the dates charged in the indictment, Jaramillo was not in Albuquerque, but his office staff nonetheless submitted

- 3 -

claims for services provided by Meyerowitz.

Before the trial, the government filed a notice of intention to introduce the following evidence: (1) the average length of time Jaramillo and Meyerowitz spent with patients; (2) the length of office visits and how much time patients spent waiting to see Jaramillo and Meyerowitz; (3) the extensive use of videotapes during office appointments; (4) the use of videotapes in English which were shown to Spanish-speaking patients; (5) the lack of documentation or insufficient documentation in office and patient files; (6) the use of presigned prescription forms; (7) the presence of improperly documented progress notes in hospital patient files; (8) the submission by Meyerowitz of progress notes at the hospital in advance of his group therapy sessions; and (9) the absence of Jaramillo from the hospital treatment planning sessions for patients. The government argued that this evidence was directly relevant to the conspiracy count and to Jaramillo's knowledge and intent on all counts under Federal Rule of Evidence 401, and, alternatively, that the evidence was relevant under Rule 404(b) to show Jaramillo's knowledge, intent, preparation, plan, and absence of mistake. The trial court admitted evidence in categories 1 through 6 under Rule 401 as direct proof of the conspiracy charge. The court also found the evidence relevant under Rule 404(b) as proof of Jaramillo's intent to defraud the government and as proof of his knowledge, preparation, and planning. The court admitted the evidence in

categories 7, 8, and 9 under Rule 404(b) to show knowledge and absence of mistake or accident.

Prior to trial, the government also notified Jaramillo that it intended to introduce evidence that he falsely documented the time he spent with patients at the Presbyterian Hospital. Jaramillo objected to the admission of this evidence at trial, arguing that it would raise issues of medical malpractice unrelated to the criminal charges. The court admitted the evidence under Rule 404(b), however, as proof of knowledge, intent, preparation, plan, and absence of mistake.

At trial, the government presented evidence regarding the billing of Jaramillo's office and hospital patients. The government also introduced copies of checks sent to Jaramillo from the three federal programs as proof of payment of claims. Jaramillo objected to the admission of certain checks (Exhibits 296, 297, and 298) because, in addition to showing the claim amounts that were the subject of Jaramillo's indictment, the checks also reflected legitimate claims that were not part of the indictment. The parties then stipulated that Exhibits 296, 297, and 298 would not go to the jury, but could be used as a basis for the testimony of other witnesses without reference to the face amounts shown on the checks. The stipulation informed the jury that Jaramillo had received payment for all charged claims to Medicaid and for claims charged in the conspiracy count, but that the checks would not be given to them during deliberations.

After the trial, the district judge notified the attorneys that Exhibits 296, 297, and 298 had inadvertently gone to the jury during its deliberations. Jaramillo moved for a new trial, arguing the amounts on the checks in the exhibits were far more than the total amount of charged claims, and that the jury could have used this information to find that he had the necessary state of mind to file false claims. The district court denied the motion on the ground that the information in the exhibits, the amounts paid on Medicaid claims, was also present in other exhibits and testimony. Moreover, the court noted that the information in these exhibits was similar to information admitted without objection in exhibits involving Medicare and CHAMPUS payments.

At sentencing, the court rejected the presentence report's determination of the base offense level which used $259,922 as the amount of loss to the government, an amount which included money paid on both indicted and unindicted claims. The trial court instead found that the loss to the government was $12,573, the amount paid on the indicted claims. This amount of loss reduced the base offense level by five levels. The presentence report also recommended a two-level reduction in the base level offense for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). At sentencing, the court told Jaramillo that his initial statement of acceptance of responsibility in the presentence report was insufficient to support an adjustment in his sentence, but

- 6 -

that an appropriate statement would allow the court to impose probation. When Jaramillo then told the court that he accepted the jury's finding that he was guilty and that he was remorseful and accepted responsibility, the court decreased the offense level by two levels for acceptance of responsibility. The government objected to the court's findings on the amount of the government's loss and the sufficiency of Jaramillo's acceptance of responsibility.

## DISCUSSION

### A.   Rule 404(b) Evidence

Jaramillo claims that the court erred in denying his motion in limine to exclude part of the government's evidence admitted under Rule 404(b). We review the district court's decision to admit evidence under Rules 401 or 404(b) for abuse of discretion. United States v. Hardwell, 80 F.3d 1471, 1492 (10th Cir. 1996) (Rule 401); United States v. Olivo, 69 F.3d 1057, 1064 (10th Cir. 1995) (Rule 404(b)).

The government offered the evidence in question as direct proof that Jaramillo conspired with Meyerowitz to conceal the fact that Meyerowitz, not Jaramillo, provided psychological services, in order to defraud the federal programs. The evidence was also offered, alternatively, as evidence of Jaramillo's intent, preparation, plan, knowledge, or absence of mistake or accident. After reviewing the record, we conclude that the district court did not

err by admitting the evidence. Most of the evidence was directly relevant to the conspiracy charge and therefore was properly admitted under Rule 401.

In addition, the court did not err in admitting evidence under Rule 404(b). Evidence of other bad acts, like the evidence admitted in this case, is admissible only when it is relevant and offered for a proper purpose. United States v. Jefferson, 925 F.2d 1242, 1258 (10th Cir.), cert. denied, 502 U.S. 884 (1991). In addition, the district court must determine that the probative value of the evidence outweighs its potential for unfair prejudice and must give a limiting instruction if a party requests. Id. In this case, Jaramillo contended that he lacked the knowledge and intent to file false claims because he believed he could properly bill for Meyerowitz's services when Jaramillo was not present. The court admitted four categories of evidence under Rule 404(b) on the knowledge and intent issue: (1) the noncompliance by Jaramillo and Meyerowitz with required documentation of progress notes in the hospital files; (2) the submission of progress notes by Meyerowitz before meeting with the patients; (3) the absence of Jaramillo at hospital treatment planning sessions; and (4) the Presbyterian Hospital incident in which Jaramillo recorded spending more time with patients than he actually spent. All this evidence was probative of Jaramillo's knowledge that he was defrauding the government and of his intention to do so. The court did not abuse its discretion by admitting this evidence.

**B.     New Trial**

Jaramillo next argues that the court should have granted him a new trial after discovering that the jury saw unadmitted evidence while deliberating. We review the court's refusal to grant a new trial for abuse of discretion. Patton v. TIC United Corp., 77 F.3d 1235, 1240 (10th Cir.), cert. denied, 116 S. Ct. 2525 (1996). A new trial is warranted when there was the "slightest possibility" that viewing the unadmitted evidence affected the verdict. United States v. Wood, 958 F.2d 963, 966 (10th Cir. 1992). On appeal, we look to whether the defendant was harmed or prejudiced by the jury seeing the evidence. United States v. Marx, 485 F.2d 1179, 1184 (10th Cir. 1973), cert. denied, 416 U.S. 986 (1974).

In this case, the jury inadvertently saw copies of Medicaid checks that had not been admitted into evidence and that contained amounts legitimately paid to Jaramillo. Jaramillo contends that the jury could have used this evidence to decide that he had the requisite intent to defraud the government, and consequently, that he was prejudiced and entitled to a new trial. The record indicates, however, that Jaramillo was not harmed or prejudiced by the jury seeing this evidence. Other evidence that was admitted showed that Jaramillo had been paid far more than the total amount of money shown in the three exhibits. In addition, checks which paid Jaramillo for Medicare and CHAMPUS claims were admitted without objection, and many of these checks had face amounts for more

than one claim. The copies of the Medicaid checks were cumulative and duplicative of other evidence. We cannot say that there was the slightest possibility that this evidence affected the verdict. Thus, we hold that the district court did not abuse its discretion in denying a new trial.

### C. Loss to the Government

The government argues that the court erred in finding that the loss to the government was $12,573, rather than $259,922, which allowed the court to reduce the base offense level by five levels. We review the district court's application of the Sentencing Guidelines de novo, United States v. Belt, 89 F.3d 710, 713 (10th Cir. 1996), and its factual findings for clear error. United States v. Lacey, 86 F.3d 956, 967 (10th Cir. 1996). The government has the burden of proving the amount of loss by a preponderance of the evidence. United States v. McAlpine, 32 F.3d 484, 487 (10th Cir.), cert. denied, 115 S. Ct. 610 (1994). The record must support the conclusion that the defendant intended the loss or that a loss in that amount was probable. United States v. Smith, 951 F.2d 1164, 1166 (10th Cir. 1991).

At sentencing, the court determined that the amount of loss to the government was $12,573, which was the total amount Jaramillo claimed for services provided by Meyerowitz when Jaramillo was out of Albuquerque. This amount formed the basis for all the counts in the indictment except the conspiracy

count. At sentencing, the government contended that it proved at trial that the loss to the three programs greatly exceeded the amounts involved in the charged counts and asked the court to calculate the loss to the government at $259,922. The record, however, supports the court's determination on the amount of loss. While the court could have adopted the presentence report's recommendation and found that the amount of loss was $259,922, its decision not to do so was not clear error.

## Acceptance of Responsibility

The government contends that Jaramillo's acceptance of responsibility statement was insufficient to warrant a decrease in the offense level. We review the court's decision on this issue for clear error. United States v. Ivy, 83 F.3d 1266, 1292 (10th Cir. 1996).

Sentencing Guideline § 3E1.1 allows a decrease of two offense levels for defendants who clearly demonstrate acceptance of responsibility. Application Note 2 states that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." The Note further states that "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial," such as when the defendant goes to trial to preserve issues that do not relate to factual guilt. The Note also states, however, that when the defendant has gone to trial, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."

At sentencing, the court found that based on the statement Jaramillo made to the probation officer, Jaramillo had not accepted responsibility for his actions. However, the court told Jaramillo that if he made an appropriate statement of

acceptance of responsibility, the reduction in the base offense level would allow the court to give Jaramillo probation. The court recessed to allow Jaramillo to create an acceptable statement. After the recess, Jaramillo stated to the court: "The jury has found me guilty and I accept the jury's findings and therefore I am remorseful and I will accept the responsibility." The court then found that Jaramillo had accepted responsibility and awarded him the two-level decrease in the base offense level.

After reviewing the record, we conclude that the court's decision to grant the reduction for acceptance of responsibility was clear error. In this case, Jaramillo contested his guilt from the beginning by denying that he had the requisite intent to commit the crimes charged. In addition, Jaramillo's initial statement of acceptance of responsibility was so inadequate that the court decided to allow Jaramillo to devise a more suitable statement before imposing a sentence. This is hardly the sort of "rare situation" involving a defendant convicted by a jury that warrants an acceptance of responsibility reduction.

In sum, we hold that the district court did not err by admitting government evidence under Rule 404(b) and by denying Jaramillo a new trial. Furthermore, the court did not err in its calculation of the amount of the government's loss. However, the court committed clear error in its decision to grant the two-level decrease in the base offense level for acceptance of responsibility. Accordingly,

we AFFIRM Jaramillo's conviction but REVERSE and REMAND for resentencing consistent with this opinion.