**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 22 1998**

**UNITED STATES COURT OF APPEALS**

**PATRICK FISHER**
**Clerk**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JACK WESLEY CHAMBLEE,

    Defendant-Appellant.

No. 97-5144
(D.C. No. 97-CR-32-K)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant-appellant, Jack Wesley Chamblee, was convicted on a plea of guilty

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

entered April 15, 1997, to a one count indictment charging conspiracy to make, utter, and possess counterfeit and forged securities. 18 U.S.C. § 371; 18 U.S.C. § 513(a). Chamblee was sentenced on July 14, 1997, to thirteen months' imprisonment, three years of supervised release, and he was ordered to make restitution totaling $13,350.96 to the several victims. Vol. I Tab 46.[1] Chamblee was permitted to remain free on bond following sentencing and ordered to report to prison on August 15, 1997. Id.; Vol. III at 14.

Chamblee timely filed a notice of appeal on July 21, 1997, and he presents the following issues: (1) whether the district judge erred in calculating the amount of loss under the Guidelines, and (2) whether the judge erred in adding six levels to the base offense level. Corrected Brief for Defendant-Appellant at 2, 10. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[1]In calculating Chamblee's sentence under the Guidelines, and pursuant to § 2X1.1(a), the judge below began with a base offense level of six under § 2F1.1(a). Presentence Report (PSR) at ¶ 23. Six levels were added under § 2F1.1(b)(1)(G) because the judge found that the loss exceeded $70,000, but was less than $120,000. Id. at ¶ 24; Vol. III at 6. The judge then added four levels under § 3B1.1(a) based on his finding that Chamblee was an organizer or leader of the conspiracy. Vol. III at 8. This total offense level of 16 was then reduced by three levels for acceptance of responsibility under § 3E1.1, id., and one level for substantial assistance under § 5K1.1. Id. at 9. The resulting total offense level is 12, and, combined with a criminal history category of one, the possible term of imprisonment under the Guidelines ranged from 10 to 16 months.

We acknowledge the inconsistent statement contained in the written judgment's Statement of Reasons, which indicates that the total offense level is 13. Vol. I at Tab 46. However, the written Statement of Reasons fails to consider the one level reduction for substantial assistance which the judge applied in his oral pronouncement of sentence. As we have stated, the oral sentence controls over the written judgment when the two conflict. United States v. Villano, 816 F.2d 1448, 1450 (10th Cir. 1987).

# I

The indictment to which Chamblee pled guilty charged that he and others conspired to make, utter, and possess counterfeit and forged payroll and personal checks. Vol. I Tab 1. With the aid of a computer, Chamblee managed to manufacture counterfeit checks in the likeness of legitimate checks issued by several businesses in the Tulsa area. Presentence Report (PSR) at ¶ 8-9. The counterfeit checks were then cashed or used to purchase goods and services by Chamblee and the other coconspirators. Id. During the conspiracy, the coconspirators successfully cashed or used counterfeit checks totaling $13,350.96. Id. at ¶ 19. The PSR further states that members of the conspiracy were found to be in possession of an additional $66,070.65 in completed, uncashed checks,[2] and that the combined loss and attempted loss resulting from the conspiracy totaled $80,330.61. Id. After starting from a base offense level of six for offenses involving altered or counterfeit instruments, the PSR

---

[2]The PSR's representation of the intended loss is confusing. In paragraph 19 of the PSR, it is alleged that "During the conspiracy, counterfeit checks totaling $13,350.96 were successfully cashed or used for the purchase of goods and services. Completed checks possessed by members of the conspiracy total $66,070.65, resulting in a combined loss and attempted loss totaling $80,330.61." Adding $13,350.96 and $66,070.65 totals $79,421.61, not $80,330.61.

However, other parts of the PSR indicate that the uncashed counterfeit checks found in the possession of the coconspirators total $66,979.65. See, PSR paragraphs 11-13, 16-17. And, on page 3 of the Addendum to the PSR, it is represented that $66,979.65 in counterfeit checks were uncashed. Moreover, the judge below stated that the remaining uncashed counterfeit checks totaled "almost $67,000," Vol. III at 6, and Chamblee states in his brief that "additional completed counterfeit checks in the amount of $66,979.65 were included . . . in determining the loss amount . . . ." Aplt. Opening Brief at 3. We therefore find ample evidence that the completed, uncashed counterfeit checks total $66,979.65.

used the full intended loss in recommending a six level increase under Guidelines § 2F1.1(b)(1)(G), which provides for such an increase when the total loss exceeds $70,000, up to $120,000. PSR at ¶ 24. The district judge adopted this sentencing recommendation, reasoning that since the intended loss can be determined, it will be used in the sentencing calculation. Vol. III at 6.

Chamblee argued below, and he now argues on appeal, that only the actual loss and the "specifically intended loss" should be used in calculating his sentence, rather than the loss associated with those completed counterfeit checks that the conspirators neither used nor attempted to use. Chamblee agrees that the actual loss totaled $13,350.96, and that this figure is properly included in his sentencing calculation. Aplt. Opening Brief at 3, 10. However, with respect to the use of intended loss, he maintains that only those counterfeit checks which the conspirators actually attempted to cash or use should be counted in his sentencing calculation.

The PSR reveals that conspirator Melissa Cooke was arrested while attempting to cash a counterfeit check in the amount of $298.05, Chamblee was arrested while attempting to pass a counterfeit check in the amount of $335.88, and conspirator Donald Coltharp was arrested for attempting to cash a counterfeit check in the amount of $250.00. PSR at ¶ 11, 13, 17. These checks total $883.93. The conspirators neither used nor attempted to use the remaining counterfeit checks totaling $66,095.72. Hence, Chamblee argues that, under a proper interpretation of the Guidelines, the full intended loss should only include the

$13,350.96 in actual loss plus $883.93 in the "specifically intended loss," or $14,234.89, which represents the counterfeit checks which the conspirators actually used or attempted to use. He contends that it was error to include in the sentencing calculation the completed counterfeit checks which were merely possessed by members of the conspiracy.

## II

We "review a district court's determination of a U.S.S.G. § 2F1.1 loss under the clearly erroneous standard, but the factors a district court properly may consider are reviewed de novo." United States v. Yarnell, 129 F.3d 1127, 1136 (10th Cir. 1997) (quotations and citations omitted). Section 2F1.1(a) mandates a base offense level of six for crimes involving the forgery or counterfeiting of instruments of the kind involved in this case. Subsection (b)(1) then provides an incremental scale when the loss exceeds $2,000. Chamblee contends that using only the actual loss and "specifically intended loss," totaling $14,234.89, places him within § 2F1.1(b)(1)(D), which results in a three level increase. The government, however, argues that the full intended loss of $80,330.61 places him within subsection (b)(1)(G), resulting in a six level increase. Hence, the precise issue is whether the full intended loss properly includes those amounts associated with the counterfeit checks that the conspirators neither used nor attempted to use.

Comment 7 to § 2F1.1 provides guidance on this issue.[3] The comment states that "if

---

[3]Commentary contained in the Guidelines Manual, which interprets or explains a guideline, is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or is a plainly erroneous reading of, that guideline. Stinson v. United

an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." Relying on this comment, the district judge dismissed Chamblee's contention that the intended loss was too speculative, and he concluded that the entire amount of the completed, uncashed checks, along with the amount of the checks which the conspirators actually cashed or attempted to cash, should be included in the full intended loss because the intended loss can be readily determined and the conspirators possessed the ability to cash the unused checks had they not been apprehended. Vol. III at 6. This finding is not clearly erroneous.

The district court's calculation of loss need only be supported by a preponderance of the evidence, United States v. Hargus, 128 F.3d 1358, 1364-65 (10th Cir. 1997), cert. denied, 118 S. Ct. 1526 (1998), but "the record must support the conclusion that the defendant intended the loss or that a loss in that amount was probable." United States v. Jaramillo, 98 F.3d 521, 525 (10th Cir.), cert. denied, 117 S. Ct. 499 (1996). Further, Comment 8 to § 2F1.1 states that the loss need not be determined with precision but that the court need only make a reasonable estimate of the loss, based on the available information.

Here, Chamblee was involved in a conspiracy to manufacture and pass counterfeit checks. The members of the conspiracy, as well as Chamblee himself, passed and attempted to pass the counterfeit checks prior to being apprehended. There is absolutely no indication

---

States, 508 U.S. 36, 44-45 (1993). See also United States v. Smith, 133 F.3d 737, 745 (10th Cir. 1997) ("We . . . follow the commentary in the guidelines that interprets or explains how a guideline is to be applied.").

from the record that, absent their apprehension, the conspirators would have destroyed the completed, uncashed checks or that they would have abandoned their unlawful endeavor. Moreover, considering the fact that the conspirators were "extensively involved in the use of methamphetamine" and that the "[p]roceeds from the cashing of the counterfeit checks were used primarily to support their drug habit," PSR at ¶ 8, it is probable that the remaining uncashed checks would have been used to this end. The government also points out that Chamblee had a vested interest in seeing all counterfeit checks cashed since he, as the conspiracy's organizer and the manufacturer of the counterfeit checks, received a percentage of the proceeds from most of the checks which the other conspirators cashed. PSR at ¶ 8-10.

Furthermore, the precise amount of intended loss is plain from the face of the counterfeit checks.[4] As such, the amount of the full intended loss was not too speculative to

---

[4]The government also points to the Addendum to the PSR, in which the Probation Office deleted from the loss calculation those checks that were of poor quality and would have been non-negotiable. Addendum to PSR at 2. Hence, it is apparent that Chamblee was only held responsible for those completed, uncashed checks that the conspirators might have successfully cashed, and would have likely attempted to cash, had they not been apprehended.

Chamblee suggests in pages 4 through 6 of his corrected brief that the government failed to prove intended loss with reasonable certainty, as required by §§ 2X1.1(a) and 2F1.1. This argument was addressed in the addendum to the PSR. As support for his argument to the district court, Chamblee cited and relied upon United States v. Galbraith, 20 F.3d 1054, 1059 (10th Cir. 1994), which held that "the loss defendant subjectively intended to cause is not controlling if he was incapable of inflicting that loss." The addendum to the PSR, however, points out that contrary to Galbraith, Chamblee and the other conspirators actually inflicted a loss of $13,350.96 and also possessed the ability to cash the remaining $66,979.65. Addendum to PSR at 3-4. The district judge adopted that reasoning and rejected Chamblee's argument. Vol. III at 6. We agree - Chamblee and his coconspirators demonstrated their capability of inflicting loss by successfully cashing several counterfeit checks. It was only

be determined.  Hence, the record provides ample support for the conclusion that it is probable that the conspirators would have used or attempted to use all of the completed counterfeit checks, with the resulting intended loss totaling $80,330.61.  Accordingly, the district court did not err when it increased Chamblee's base offense level by six levels under § 2F1.1(b)(1)(G).

AFFIRMED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

their apprehension that averted the actual infliction of further loss.