**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

WAYNE MEYEROWITZ,

      Defendant-Appellee.

No. 97-2031
(D.C. No. CR-94-333-SC)
(New Mexico)

## ORDER AND JUDGMENT*

Before **SEYMOUR**, Chief Judge, **McWILLIAMS** and **MURPHY,** Circuit Judges.

Wayne Meyerowitz and codefendant James Jaramillo were charged with one count of conspiracy to defraud the United States by filing false claims for payments under the Medicare, Medicaid, and CHAMPUS programs in violation of 18 U.S.C. § 371, and with numerous substantive counts of filing false claims

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

under those programs.[1] The district court dismissed the Medicaid counts during defendant's trial and the jury found defendant guilty on the remaining counts. The district court subsequently granted defendant's motion for judgment of acquittal on all the counts of conviction, or alternatively for a new trial. The government appeals and we affirm.

Dr. Jaramillo was a licensed medical doctor who provided psychiatric services to patients at his office and at a private psychiatric hospital. He was an authorized provider of services to people insured under Medicare and CHAMPUS, which are federally funded health insurance programs. Defendant Wayne Meyerowitz, who has a medical degree from a university in Mexico and a master's degree in counseling, worked with Dr. Jaramillo. Defendant is not licensed to practice medicine in the United States, and was not an authorized provider under the above programs. The charges in the indictment relate to services provided by defendant on dates when Dr. Jaramillo was either out of the state or out of the country. The government contended at trial that Dr. Jaramillo could not legally submit claims for services rendered by defendant to patients on those dates, that both Dr. Jaramillo and defendant knew such claims were illegal, and that defendant knowingly conspired with and aided and abetted Dr. Jaramillo

---

[1] Dr. Jaramillo was tried separately. He was acquitted on the conspiracy count and convicted on the substantive counts with which he was charged. See United States v. Jaramillo, 98 F.3d 521 (10th Cir. 1996).

-2-

in the submission of those claims.

Defendant contends that the programs allowed a provider such as Dr. Jaramillo to bill for services rendered by another under his personal supervision and that he had no reason to believe Dr. Jaramillo was improperly charging for him.[2] Defendant also asserts that he had nothing to do with the preparation and submission of claims to the programs other than telling the billing clerks the length of the sessions he had with patients. In granting the motion for acquittal, the trial court ruled that the government failed to prove the element of intent with respect to any of the counts of conviction.

"We review a district court's grant of a motion for acquittal under the same standard that the trial court applied when granting the motion." United States v. Evans, 42 F.3d 586, 589 (10th Cir. 1994). We view the record in the light most favorable to the government "to determine whether substantial evidence exists, direct and circumstantial, together with reasonable inferences therefrom, whereby

---

[2] At one point in its Brief on Appeal, the government asserts that defendant's defense was not that he was supervised when he provided the services, but that he was ignorant of the billing process and therefore had no intent to defraud. In so doing the government mischaracterizes the nature of the defense presented. As the district court stated in discussing the new trial motion:

> The supervision issues go the core of the case, i.e. the defendant's intent to commit the crimes charged. If defendant thought the federal programs could be billed for his services as long as he was working under Dr. Jaramillo's supervision, then the billings could have been submitted incorrectly but without the requisite intent to defraud.

Rec., Vol. I, Doc. 186 at 11.

a reasonable jury might find the defendant[] guilty beyond a reasonable doubt." United States v. Migliaccio, 34 F.3d 1517, 1521 (10th Cir. 1994).

To convict defendant of a conspiracy under section 371, the government was required to prove beyond a reasonable doubt that he agreed to violate the law. Id. "[M]ere knowledge of or acquiescence in the object of a conspiracy does not make one a coconspirator." Id. (citing United States v. Butler, 494 F.2d 1246, 1249 (10th Cir. 1974)). "We will not uphold a conspiracy conviction obtained . . . by nothing more than 'piling inference upon inference.'" Id. (quoting United States v. Fox, 902 F.2d 1508, 1513 (10th Cir. 1990)). To convict defendant of aiding and abetting Dr. Jaramillo as charged in the substantive fraud counts, the government likewise had to prove that defendant willfully associated with and aided the criminal venture. See United States v. Jones, 44 F.3d 860, 869 (10th Cir. 1995). "A defendant 'may not stumble into aiding and abetting liability by inadvertently helping another in a criminal scheme unknown to the defendant.'" Id. (quoting United States v. Hanson, 41 F.3d 580, 582 (10th Cir. 1994)). Both conspiracy and aiding and abetting "require at a minimum that the [defendant] was a knowing participant . . . . Evidence insufficient to support the aiding and abetting conviction would likewise be insufficient to support a conspiracy conviction based on the same facts." Id. at 869 n.2.

It is undisputed that Dr. Jaramillo, as the authorized provider, was solely

responsible for the accuracy of the representations in the claims. The government presented no direct evidence tending to show defendant knew it was improper for Dr. Jaramillo to bill for services defendant rendered when Dr. Jaramillo was out of the office. Although the government presented evidence that the level of supervision provided by Dr. Jaramillo was not sufficient to allow him to bill for the services performed by defendant in Dr. Jaramillo's absence, the government presented no evidence defendant knew the supervision was inadequate.[3] The government claims that the strongest evidence of defendant's knowing participation in an agreement to defraud is a letter he wrote to Dr. Jaramillo setting out income he generated while Dr. Jaramillo was out of the office. However, the letter does not in any way tend to show defendant knew the income was derived improperly. The government also relies heavily on evidence it asserts proves defendant and Dr. Jaramillo agreed to pass defendant off as a licensed physician in order to bill his services improperly. But we would have to infer from ambiguous evidence[4] an agreement to pass defendant off as a licensed

---

[3] The government points to evidence that defendant gave instructions to the staff to bill for full, half, or brief sessions with patients, that defendant wrote prescriptions on forms signed by Dr. Jaramillo, that some patients and hospital personal thought defendant was a licensed physician, and that defendant signed patient charts as Doctor Jaramillo/Wayne. None of this evidence, however, tends to show defendant knew that Dr. Jaramillo could not bill Medicare or the CHAMPUS programs for his services.

[4] In support of its asserted agreement to pass defendant off as a licensed physician, the government on appeal points to evidence that defendant did <u>not</u>

doctor and then infer a further agreement to do so in order to bill federal programs improperly. This is precisely the piling of inference upon inference that we have held inadequate to support a conspiracy conviction. See Migliaccio, 34 F.3d at 1521. Moreover, whether patients or staff thought defendant was a licensed doctor is irrelevant to the charge in this case; all the false claims counts were for services *billed by Dr. Jaramillo for work performed or allegedly supervised by him*, not for services performed independently by defendant as a licensed doctor.

In sum, we have thoroughly and carefully reviewed the entire record and we agree with the district court that the government did not produce evidence from which a reasonable jury could find beyond a reasonable doubt that defendant knew the claims Dr. Jaramillo filed were improper. Accordingly, we **AFFIRM** the judgment of acquittal on all counts..

ENTERED FOR THE COURT

Stephanie K. Seymour
Chief Judge

---

display his credentials in the office or have his name on the office letterhead, that defendants referred to defendant as "Doctor," and that he signed hospital patients' files as Dr. Jaramillo/Wayne. This evidence hardly supports a reasonable inference that the conduct was taken in an effort to pass defendant off as a licensed physician. Indeed defendant argued at trial that much of this evidence tended to prove he did not intend to do so. Moreover, defendant was not charged with misleading patients as to his status.