**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 18 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RAYMOND FARMER,

      Defendant-Appellant.

No. 98-2308
(D.C. No. CR 98-63 LH)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge and
**EBEL**, Circuit Judge.

Appellant Raymond Farmer was indicted on one count of possession with

intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. After an evidentiary hearing, the

district court denied Farmer's motion to suppress evidence obtained following a

vehicle stop. A jury subsequently convicted Farmer on the single count in the

indictment. On appeal, Farmer argues that the district court erred by (1)

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

improperly denying his motion to suppress, (2) allowing the cocaine to be displayed to the jury and admitting numerous photographs of the cocaine into evidence, and (3) overruling discovery-based objections to the testimony of two prosecution witnesses. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## BACKGROUND

On the night of January 14, 1998, New Mexico State Police Sergeant Charles Devine[1] was patrolling Highway 54, which is the major highway connecting El Paso, Texas and Alamogordo, New Mexico. Devine testified that Highway 54 is a major corridor for drug smuggling. Moreover, the officer testified that he knew the Border Patrol checkpoint on Highway 54 was closed that night.

At approximately 10:10 p.m., Sergeant Devine noticed a pickup truck heading northbound on 54 which was traveling approximately fifteen miles per hour below the posted speed limit of 65 miles per hour. At that point, the officer turned onto the highway to follow the truck, and immediately noticed that it was

---

[1] At the suppression hearing, Sergeant Devine testified that he has served 10 years with the New Mexico State Police. During those ten years, Sergeant Devine has made approximately 15,000 to 18,000 traffic stops and has been involved in roughly 200 narcotics arrests.

having difficulty remaining in one lane. After the truck crossed over both the shoulder stripe and the center lane stripe several times, Sergeant Devine became concerned that the driver was either intoxicated or that there was something wrong mechanically with the vehicle, so he activated his red lights and pulled the truck over.

Sergeant Devine then got out of his car and approached the truck, which he noticed was running very poorly. He asked the defendant, the only occupant of the truck, if he was having difficulty with the vehicle. Devine testified that the defendant was "virtually nonresponsive" and made no eye contact. However, despite his initial failure to respond or make eye contact, Devine did state that the defendant answered all of his questions.

Sergeant Devine then asked defendant for his license and vehicle registration, which the defendant handed to the officer along with his insurance card. The license identified the driver as Raymond Farmer from Roswell, New Mexico, while the insurance card indicated that Farmer was not the owner of the vehicle. The truck was registered to a Miguel Ochoa in El Paso, Texas. Devine also noticed that the insurance had been purchased the same day. Sergeant Devine found these facts to be significant, because a month earlier he had pulled over another vehicle where the driver was not the registered owner of the vehicle

and the insurance had been purchased the same day. Narcotics were eventually found in that vehicle.

Devine then asked if Farmer was traveling all the way to Roswell that night, to which Farmer responded that he was heading only to Alamorgordo to stay with his nephew because he was not feeling well. When questioned about his nephew, Farmer was unable to provide either an address or a phone number.

Farmer informed Sergeant Devine that he had been in El Paso for a couple of days visiting Miguel Ochoa and was heading back to Roswell for a couple of days. Sergeant Devine testified that he observed only a small bag in the truck, which he described as a camera bag approximately twelve inches by four to six inches. He noticed no other luggage or clothing in the vehicle. This lack of luggage aroused the officer's suspicions given that Farmer had purportedly spent several days in El Paso.

Sergeant Devine also testified that he found suspicious the fact that, although the truck was about twenty years old, it was freshly painted and had new tires and expensive wheels, and no clutter on the inside of the truck. The glove compartment contained only the proof of insurance document.

At this point Sergeant Devine suspected that Farmer may have been transporting narcotics. Sergeant Devine returned to his patrol car, and ran various routine computer checks on the license and vehicle. During these checks, he

learned that the vehicle had made a recent border crossing, although the actual day could not be pinpointed. Sergeant Devine then contacted Deputy Brent Hill, a canine handler, and requested the assistance of his dog.

While all of this was going on, U.S. Border Patrol Agent John Swaykus arrived on the scene. He had heard Sergeant Devine calling for Deputy Hill over the radio, and came to see if Devine needed any assistance. The computer check results then came back and Sergeant Devine completed his written warning to Farmer for the lane violation. While he was finishing the citation, Deputy Hill arrived on the scene with his dog.

Devine then returned to Farmer's truck and asked him to get out of the truck. Devine explained to Farmer that he was issuing him a written warning and advised him to have the truck fixed, and then proceeded to return all of the documents he had received from Farmer.[2]

After returning all of the documents, Devine asked Farmer three questions. Devine first asked if Farmer was carrying any large amounts of cash, to which Farmer responded, "no." He then asked if Farmer was carrying any marijuana, and Farmer again responded, "no." Finally, Devine asked if Farmer was carrying

_____

[2] While Sergeant Devine issued the warning to Farmer, Officers Swaykus and Hill were standing behind and to the side of Sergeant Devine. Neither officer participated in the issuing of the citation, or the ensuing questions. Moreover, Deputy Hill's canine remained in his car during this period.

any cocaine. Farmer responded by raising his arms and taking several steps back and stating "No, but if there's anything in there, I don't know about it." At that point finding Farmer's reaction very suspicious, Devine introduced Farmer to Deputy Hill, and requested permission to search his vehicle with the assistance of Deputy Hill's dog. Farmer responded, "Go ahead." Hill retrieved his dog and again requested consent to search the truck which he received from Farmer. The dog alerted to all four wheels on the vehicle and on the two rear wheels under the truck bed area. Devine then personally inspected the wheels of the vehicle and noticed that they contained no wheel weights which aid in the balancing of the tires. Based on the dog's reaction to the wheels and the lack of weights, Sergeant Devine concluded that the vehicle was carrying narcotics.

For safety reasons Sergeant Devine elected not to inspect the contents of the wheels roadside and instead asked Farmer to accompany the agents to the Border Patrol station in Alamogordo. Farmer agreed. At the Border Patrol station, another canine alerted to the rear wheels of the pickup. The tires were removed from the rear wheels, revealing secret compartments containing a total of twelve brick-shaped packages of cocaine weighing approximately 30 pounds. Farmer was then formally arrested.

On April 3, 1998, Farmer filed a motion to suppress physical evidence and statements. A hearing on Farmer's motion was held May 6, 1998, and the motion

was denied. A jury trial was then held on May 11 and 12, 1998. On the morning of trial, immediately preceding opening statements, Farmer alleged that the government had failed to comply with Fed. R. Crim. P. 16(a)(1)(E) and the court's standing discovery order with respect to expert witness disclosure.[3] Farmer requested that the court exclude the testimony of forensic chemist, Ted Chapman, and DEA Special Agent James Baker. Farmer claimed that he was not given the basis for Chapman's conclusion that the substance he tested was cocaine, nor the basis for Agent Baker's opinion on the weight of the cocaine and his opinion as to intent to distribute versus personal use. The district court offered Farmer a one-week continuance, which he declined. The testimony of the two witnesses was admitted at trial over the objection of Farmer.

Finally, at trial, the government offered numerous photographs of the truck and concealed compartments as well as separate photographs of the bundles of cocaine that were removed from the wheels of the truck. Farmer objected to eight of the photographs on the ground that they were cumulative in violation of Fed. R. Evid. 403. In addition, during the testimony of one of the government

---

[3] Rule 16(a)(1)(E) states that "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E). Farmer made such a request of the government on May 4th. In addition, the district court's discovery order, issued February 10th made the same demand on the government as rule 16.

witnesses, the government offered into evidence the box containing the packages of cocaine seized from the truck and had the witness come down from the witness stand and describe the contents of the box.  Counsel objected on the grounds that this was highly prejudicial, but was overruled.

After the jury trial, defendant was convicted of one count of possession with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2, and sentenced to 121 months imprisonment.

## DISCUSSION

### I.  Motion to Suppress

On appeal of a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the government.  See United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998).  We accept the district court's factual findings unless they are clearly erroneous.  Id.  "'[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  United States v. De La Cruz-Tapia, 162 F.3d 1275, 1277 (10th Cir. 1998) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed.2d 746 (1948)).  We review de novo a district court's

ultimate conclusion of reasonableness under the Fourth Amendment. See Cruz-Tapia, 162 F.3d at 1277.

Farmer does not contest the justification for the stop,[4] nor does he complain about the length of time from the initial stop to the delivery of the warning citation. Rather, Farmer claims that he was unlawfully detained in violation of the Fourth Amendment when Sergeant Devine extended the length of the traffic stop after he returned Farmer's documents and asked the three questions concerning money and drug possession, because the encounter was not consensual and the officer did not have reasonable suspicion to further detain Farmer. The district court concluded that the questions following the return of the documents occurred during a consensual encounter and, moreover, that the officer had reasonable suspicion that the vehicle was carrying narcotics.

It is well established that during a routine traffic stop a law enforcement officer may request a driver's license and vehicle registration, run a computer check, and issue a citation. United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997). Once the driver produces a valid license and registration, he is free to go

---

[4] "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). Sergeant Devine observed Farmer weaving across the lanes indicating that he may have been either intoxicated or experiencing equipment failure. Based on this observation, Sergeant Devine was justified in making a traffic stop.

on his way without the delay of further questioning.  See id.  However, if the officer wants to detain the driver for further questioning he may do so if "(1) 'during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity'; or (2) 'the driver voluntarily consents to the officer's additional questioning.'"  Id. (quoting United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994)).  If, however, the officer continues to question the driver in the absence of either of these two circumstances then "any evidence derived from that questioning (or a resulting search) is impermissibly tainted in Fourth Amendment terms."  Elliott, 107 F.3d at 813 (internal quotations and citation omitted).

## A. Consensual Encounter

In this case, we find that the questions between Sergeant Devine and Farmer concerning the carrying of cash, marijuana, or cocaine occurred during a consensual encounter.  "In determining whether a driver and police officer are engaged in a consensual encounter in the context of a traffic stop, there are few, if any, bright-line rules."  Id.  We have held that the return of the driver's documents is required before a detention can end and a consensual encounter can be found; however, we have also stated that the return of the documents does not automatically equate to a consensual encounter.  United States v. Anderson, 114 F.3d 1059, 1064 (10th Cir. 1997).

- 10 -

Once an officer has returned the documentation to the driver, our analysis turns to whether the driver has "an objective reason to believe that he was not free to end his conversation with the law enforcement officer and proceed on his way." Sandoval, 29 F.3d at 540 (quotations and citation omitted). In making this inquiry a court must consider the totality of the circumstances surrounding the encounter. Elliott, 107 F.3d at 814. In United States v. Turner, 928 F.2d 956 (10th Cir. 1991), we set out the oft repeated factors that may suggest that an encounter is not consensual. These include a "coercive show of authority" by an officer, "the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance was compelled." Id. at 959; see also Anderson, 114 F.3d at 1064; see also Elliott, 107 F.3d at 814; Sandoval, 29 F.3d at 540-41. In Sandoval, however, we cautioned that Turner did not set out an exhaustive list of factors, the absence or presence of which compels a finding one way or another that a consensual encounter occurred; instead, we stated that they are only factors that *may* be considered under the totality of the circumstances analysis. Sandoval, 29 F.3d at 541.

In this case, at the time Sergeant Devine asked Farmer the three follow-up questions, he had returned to Farmer all the documents he had taken from him. At the point at which Sergeant Devine returned the documents to Farmer, Farmer

was standing outside of his car and three officers were present: Devine, U.S. Border Patrol Agent Swaykus, and Deputy Hill. Farmer argues that because he was requested to get out of his car and was then questioned in the presence of three officers, the encounter was not consensual. We disagree.

First, Devine asked Farmer to exit his vehicle before he gave him the written warning for the purpose of issuing the citation. Thus, at the time Farmer stepped out of his truck, the officer still had Farmer's documents in his possession and therefore he was still being detained. However, once Sergeant Devine finished issuing the warning, he returned all of the documents to Farmer. It was only then that he asked the three questions.[5] Because Farmer was not asked to step out of the truck after his documents were returned, the fact that he was out of the car when Sergeant Devine asked the questions would not by itself indicate to a reasonable person that he was not free to leave.

---

[5] Farmer directs our attention to United States v. Dove, 89 F.3d 851, No. 95-1415, 1996 WL 327456 (10th Cir. June 14, 1996) (unpublished), in which we held that a driver's consent to further questioning, after his license and registration were returned, was involuntary. Id. at *5. In Dove, we focused on the fact that the driver was asked to exit the vehicle after the officer had already returned the documents to the driver. Id. Moreover, the officer directed the driver to the back of the vehicle and proceeded to ask the driver whether there was a licensed passenger in the car that could drive. Id. at *1. This series of questions was followed then by questions about the presence of drugs in the car and a request to search. Id. In this case, Farmer was asked to exit the truck prior to the return of his documents, for the purpose of issuing the citation. Sergeant Devine then returned the documents and asked three quick questions. Nothing in this scenario indicates that a reasonable person would not feel free to leave.

Farmer also argues that because there were three officers present when Devine directed the questions at Farmer, the encounter was not consensual. At the time Devine asked Farmer the three questions, Agent Swaykus and Deputy Hill were standing behind Devine and off to the side. They did not participate in any way in the questioning of Farmer. Moreover, at no time did any of the officers draw or motion towards their sidearm or any other weapon. Sergeant Devine did not use a commanding or insistent voice, nor did he intimate that Farmer was required to answer any additional questions. Finally, although the drug dog was present at the scene, he was still in Deputy Hill's car at the time of the questioning. Moreover, none of the officers informed Farmer prior to the questioning that the dog was present or that they intended to search his vehicle.[6] Under these circumstances, there was no evidence of any coerciveness on the part of the officers, nor any indication that Farmer was required to stay and answer the questions. While the officers did not specifically tell Farmer that he was free to leave, this is not required for an encounter to be consensual. Anderson, 114 F.3d at 1064; Elliott, 107 F.3d at 814. Accordingly, Farmer was not illegally detained

---

[6] An officer's intentions to search a vehicle are irrelevant to the question of whether there was a consensual encounter unless the officer communicates that intent to the defendant. Anderson, 114 F.3d at 1065. In this case, Devine never communicated to Farmer prior to the questioning that he intended to search the truck with a drug dog.

when Sergeant Devine asked him the three questions concerning cash and drugs in his possession.

**B. Reasonable Suspicion To Search the Truck**

After Sergeant Devine returned Farmer's license and registration, he proceeded to ask three questions. Devine first asked if Farmer was carrying large amounts of cash, to which Farmer responded, "no." He then asked if Farmer was carrying any marijuana, again Farmer responded, "no." Finally Devine asked if Farmer was carrying any cocaine. In response to this question, Farmer backed up and raised his hands in the air and said, "No, but if there's anything in there, I don't know about it." Following this response by Farmer, Devine requested permission to search the vehicle with the assistance of Deputy Hill's drug dog. We find that this search was supported by reasonable suspicion.

Generally, an officer's actions during a traffic stop must be reasonably related in scope to the circumstances that justified the initial stop. See United States v. McRae, 81 F.3d 1528, 1533 (10th Cir. 1996). "An investigative detention may be expanded beyond its original purpose, however, if during the initial stop the detaining officer acquires 'reasonable suspicion,' of criminal activity. . . ." United States v. Villa-Chaparro, 115 F.3d 797, 801 (10th Cir. 1997). Although "reasonable suspicion may be founded upon factors consistent with innocent travel, . . . [s]ome facts must be outrightly dismissed as so innocent

or susceptible to varying interpretations as to be innocuous." Salzano, 158 F.3d at 1111 (internal quotations and citation omitted). In this case the facts and circumstances following the questioning collectively justified the request to search the truck and the ensuing search.

At the suppression hearing, the government argued and the district court found the following factors supported the reasonableness of Sergeant Devine's suspicion that criminal activity was afoot: (1) the truck did not belong to Farmer and the insurance had been obtained on the same day, (2) Farmer was traveling late at night, on a known drug corridor from El Paso, a known drug source city, when the border check point was closed, (3) although the truck was in poor running condition, it was freshly painted with new tires and expensive wheels, (4) Farmer was unable to provide the officer with an address or phone number for his nephew in Alamagordo, (5) the lack of clothing or luggage for a trip to El Paso for a couple of days, and (6) Farmer's initial unresponsiveness and lack of eye contact with the officer. We analyze each of these factors separately and then in the aggregate to determine whether they support a reasonable suspicion of criminal activity.

First, we have often found that the inability of a defendant to provide proof that he is entitled to operate the vehicle he is driving can support a finding of reasonable suspicion. See Villa-Chaparro, 115 F.3d at 802 (considering fact that

driver did not own the car and VIN appeared to have been altered); <u>United States v. Jones</u>, 44 F.3d 860, 872 (10th Cir. 1995) (considering in a reasonable suspicion calculus the inability of the driver to prove she had permission to drive rental car); <u>United States v. Arango</u>, 912 F.2d 441, 447 (10th Cir. 1990) (factoring in the inability of officer to contact the actual owner of the car to determine if the driver was in lawful possession). In this case, Sergeant Devine never tried to contact Mr. Ochoa, the lawful owner of the car, however, Devine testified that he still found it suspicious, in conjunction with the other factors, that Farmer was not the actual owner of the car. While this factor alone may not be highly suspicious, given that the vehicle came back as not stolen and the VIN checked out, the fact that the truck had insurance purchased the same day also plays into the suspicion calculus. By itself, same-day insurance may not be suspicious, however, Sergeant Devine testified at the suppression hearing that only a month earlier he had stopped another vehicle in which he ultimately found drugs where the driver was not the owner of the car and the insurance was purchased the same day. We can not completely discount the previous experience of the officer. <u>United States v. Wood</u>, 106 F.3d 942, 946 (10th Cir. 1997) (noting that "[c]ommon sense and ordinary human experience are to be employed" when looking at the totality of the circumstances). Although neither of these factors–the ownership of the car and

the same-day insurance–are manifestly suspicious, both could properly contribute to a reasonable suspicion in an experienced officer.

The district court also found the fact that Farmer was traveling late at night on a known drug corridor, from a known drug source city, at a time when the border check point was closed to be factors which suggested that criminal activity was afoot. We have previously considered the fact that a car is traveling at night on a known drug corridor, from a known drug source city when evaluating whether an officer had reasonable suspicion. see Jones, 44 F.3d at 872 (considering in determination that officer had reasonable suspicion the fact that car was traveling between Los Angeles and Detroit, two cities known for high drug usage); United States v. Barbee, 968 F.2d 1026, 1029 (10th Cir. 1992) (upholding evening stop of vehicle that was traveling on a highway known to be used by drug smugglers because it avoids a border checkpoint). This factor can therefore properly be considered in determining whether reasonable suspicion existed.

Next, the district court found suspicious the fact that the truck was in poor running condition and yet had a new paint job, new tires, and expensive wheels. The cases the government relies upon are inapposite to the present case. In both Villa-Chapparo and Mendez, we found alterations in the car to be suspicious. However, the alterations in those two cases did not deal with a simple paint job or

expensive wheels, but rather dealt with the alteration of the VIN plate, which could indicate the car was stolen, see Villa-Chapparo, 115 F.3d at 802, and a crooked faceplate and dismounted radio indicating that the owners may have been trying to conceal drugs, see United States v. Mendez, 118 F.3d 1426, 1432 (10th Cir. 1997). Further, in this case, the alterations made to the car could not have led the officer to suspect that the car was stolen.[7] Nevertheless, a new paint job could conceal a special compartment built into the vehicle body or it might help conceal other indications of alterations in the chassis. Thus, although these facts are not entitled to much weight, we do not dismiss them entirely from the equation.

The district court next cited the fact that Farmer could not provide an address or telephone number for the nephew he claimed he was going to stay with that night in Alamagordo. We find that Farmer's inability to provide an address or telephone number can be used in finding reasonable suspicion. An officer could reasonably find it suspicious that a driver would not know at least a street name for where he was staying that night or have a way to contact his nephew. See Mendez, 118 F.3d at 1431-32 & n.4 (considering as a factor in reasonable suspicion that driver did not know the address of his sister, where he claimed he

_____

[7] During the course of the initial stop, Sergeant Devine received confirmation that the truck was not reported stolen.

- 18 -

was headed, but knew how to get there); United States v. Kopp, 45 F.3d 1450, 1453-54 (10th Cir. 1995) (finding suspicious the driver's inability to identify where exactly in North Carolina he was headed).

Sergeant Devine was also suspicious of the lack of luggage present in the car, given Farmer's story that he had been visiting a friend in El Paso for a couple of days and was going back home to Roswell for a couple of days. The only bag that Devine noticed in the truck was a small bag that he described as a camera bag. There were no other bags or clothes in the truck and no trunk in which a bag could have been found. Under these circumstances, we find the lack of luggage could properly contribute to a finding of reasonable suspicion. See Jones, 44 F.3d at 872 (considering lack of luggage–only three small pieces of luggage–for a two-week trip to Los Angeles); Arango, 912 F.2d at 447 (considering inadequate amount of luggage for two-week trip).

Finally, the district court considered the initial unresponsiveness of Farmer when Sergeant Devine first approached the truck. We have frequently stated that nervousness "is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on the nervousness of either the driver or passenger as a basis of reasonable suspicion in all cases of this kind must be treated with caution." United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994) (citation and quotation omitted). In this case, Farmer initially failed to

respond to the officer's questions; however, Devine testified that Farmer did ultimately answer all of his questions. Moreover, Farmer had explained to the officer that he was not feeling well, which could easily explain his initial failure to respond. However, once again this factor may contribute to a finding of reasonable suspicion when added to all the other factors.

When this combination of suspicious circumstances is added to the unusual response given by Farmer to the last of the three questions asked by Sergeant Devine concerning the presence of cocaine in the truck–"No, but if there is any I don't know about it"–Sergeant Devine had reasonable suspicion to search the car with the drug dog.[8] Given the totality of the circumstances, we find that Sergeant Devine had reasonable suspicion that criminal activity was afoot, justifying a canine search.

**C. Consent to Search the Truck**

Even if there was not reasonable suspicion, the search by the canine would still be justified because Farmer voluntarily consented to the search. Following Farmer's unusual and suspicious answer to the final cocaine question, Sergeant

---

[8] The district court found that the officer had reasonable suspicion even before he had asked Farmer the three questions. Because we find that the three questions occurred during a consensual encounter, it is unnecessary to decide whether Sergeant Devine had reasonable suspicion prior to the responses he received to the questions. It is clear, however, that once Farmer answered the questions the officer had reasonable suspicion when looking at the totality of circumstances.

Devine introduced Farmer to Deputy Hill and asked if he could search the truck with the assistance of Deputy Hill's dog. Farmer replied, "Go ahead." Once Hill retrieved his dog, he again requested and received consent to search the truck. Farmer argues that this consent was tainted by the unlawful detention which occurred when Devine put the questions about narcotics to Farmer. We have already determined that the question and answers between Sergeant Devine and Farmer were consensual and thus at the time he answered, Farmer was not being illegally detained.

The voluntariness of consent is a question of fact to be determined from the totality of the circumstances, and therefore a district court's finding of consent will not be disturbed unless, viewing the facts in the light most favorable to the court's determination, those findings are clearly erroneous. See United States v. McKneely, 6 F.3d 1447, 1452 (10th Cir. 1993).

In this case, Farmer verbally consented to the search twice, once to Sergeant Devine and once to Deputy Hill. Moreover, there was no evidence that the officers used a commanding voice when asking to search the truck, or ever pointed or motioned towards their weapons, or communicated in any way that consent was required. Under these circumstances, we find that the consent was voluntary and thus the search was legal.

**D. Subsequent Search and Arrest**

When the drug dog was taken around the truck, he alerted to all four wheels on the vehicle and on the two rear wheels under the truck bed area. Devine then personally inspected the wheels of the vehicle and noticed that they contained no wheel weights which further confirmed his suspicions that the wheels contained narcotics. Because of safety concerns over inspecting the wheels roadside, Sergeant Devine asked Farmer to accompany the agents to the Border patrol station in Alamogordo. Farmer agreed. At the Border patrol station secret compartments were found in the tires which contained bricks of cocaine. Because Farmer was removed from the scene of the initial detention, we must determine if the removal was permissible, and, if not, whether Farmer's consent to go to the station was voluntary.

The district court found that, following the alert by the canine and the visual inspection of the tires by Devine, Devine had probable cause to arrest Farmer. "Absent exigent circumstances, once the detaining officer removes the detainee from the site of the initial stop, the line between investigative detention and custodial arrest has been crossed, and the transfer must have been supported by probable cause." United States v. Soto, 988 F.2d 1548, 1558 (10th Cir. 1993). Given the alert of the drug dog to all wheels of the vehicle and the lack of weights in the tires, we cannot conclude that the district court's finding of

probable cause to arrest at that point was clearly erroneous.  Therefore, regardless of whether Farmer consented to the trip to the border patrol station, it was consistent with the requirements of the Fourth Amendment.

In conclusion, the exchange between Sergeant Devine and Farmer occurred during a consensual encounter.  Once Sergeant Devine asked the questions and received answers from Farmer he had reasonable suspicion to search the truck.  Even without reasonable suspicion, however, Sergeant Devine was justified in searching the truck based on the consent from Farmer.  Based on the reaction of the drug dog and the visual observations by Sergeant Devine, the officer had probable cause to arrest, and the transfer to the border patrol station and subsequent search was therefore justified.  Accordingly, we affirm the district court's denial of defendant's motion to suppress.

## II. Admission of Cocaine Evidence

During trial the government introduced thirteen photographs depicting the compartments found in the truck that contained the cocaine and pictures of the cocaine itself.  Farmer objected to the introduction of eight of the photographs as cumulative and prejudicial.  Later in the trial, the government displayed the cocaine in court and had one of its witnesses approach the jury and describe the

cocaine. Farmer again objected on the grounds that the display was highly prejudicial.

We review the admission of evidence under Fed. R. Evid. 403 for an abuse of discretion. See United States v. McVeigh, 153 F.3d 1166, 1199 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999).

Fed. R. Evid. 403 states that a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." "Evidence is cumulative if repetitive, and if the small increment of probability it adds may not warrant the time spent in introducing it." United States v. Davis, 40 F.3d 1069, 1076 (10th Cir. 1994) (quotations and citations omitted). The photographs in this case show chronologically the disassembly process engaged in by the agents and show the organized and systematic way in which the compartments in the tires and the cocaine packages were numbered. No two photographs depict the same thing. The government was entitled to show the jury the sophisticated manner in which the cocaine was being trafficked. The main issue in the trial, as conceded by Farmer in his closing argument, was knowledge. Therefore, the methodical manner in which the cocaine was hidden is important to that question, as is the quantity that was placed in the tires. The jury could have concluded, from seeing the pictures which demonstrated where the cocaine was placed in the tires, that

the driver of the truck must have known the drugs were in the tires. In addition, the use of the photographs likely saved time during trial because it spared the witness from having to describe verbally exactly what he saw in the truck on the night in question. We therefore cannot say that the trial judge abused his discretion in admitting the photographs.

Farmer also objected to the display of the cocaine in the courtroom by a government witness. We have held, like other circuits considering the issue, that the display of cocaine in a drug case is not more prejudicial than probative. See Jones, 44 F.3d at 875-76 (finding that there was no abuse of discretion where trial court permitted the government to display over 200 pounds of cocaine); United States v. Gonzalez, 933 F.2d 417, 428 (7th Cir. 1991) (trial court did not abuse its discretion in permitting display of 2,248 kilograms of cocaine in drug conspiracy case); United States v. Ramos Rodriguez, 926 F.2d 418, 420 (5th Cir. 1991) (trial court did not err in displaying 227 pounds of marijuana); United States v. Arango-Correa, 851 F.2d 54, 58 (2d Cir. 1988) (trial court did not abuse its discretion under Fed. R. Evid. 403 in permitting display of 500 pounds of cocaine in drug conspiracy case); United States v. Peyro, 786 F.2d 826, 830 (8th Cir. 1986) (trial court did not abuse its discretion in permitting display of 10.5 kilograms of cocaine).

Under the circumstances of this case, undue prejudice did not occur. The cocaine was only displayed during the testimony of one witness. Furthermore, the trial judge did not allow the cocaine to go back into the jury room during deliberations. After the witness displayed the cocaine to the jury, the only other mention of the display was one brief and innocuous comment during closing argument. Under these facts, we cannot say that the trial judge abused his discretion.

## III. Discovery Sanctions

Farmer contends that the government failed to comply with its expert witness disclosure obligations under both Fed. R. Crim. P. 16(a)(1)(E) and the trial court's standing discovery order with respect to witnesses Baker and Chapman. Baker testified as to the value of the cocaine and to his belief that the amount of cocaine is consistent with an intent to distribute. Forensic chemist Chapman testified that the substance in the truck was cocaine. Farmer argues that the government failed to reveal the bases and reasons for the experts' testimony. Prior to trial, Farmer objected to the admission of these experts' testimony and requested a one-month continuance. The court denied this request and offered a one-week continuance which Farmer declined. Farmer now contends that the district court abused its discretion in failing to suppress the experts' testimony.

We review a district court's decision of whether to grant sanctions for discovery violations for abuse of discretion.  United States v. Ivy, 83 F.3d 1266, 1280 (10th Cir. 1996).   Fed. R. Crim. P. 16(a)(1)(E) states "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  The Federal Rules of Criminal Procedure give a trial court broad discretion in imposing sanctions on a party who fails to comply with a discovery order.  See Fed. R. Crim. P. 16(d)(2) ("[T]he court may order [a] party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed. . . ."). The district court's discretion, however, is guided by several factors:

> (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

United States v. Mavrokordatos, 933 F.2d 843, 847 (10th Cir. 1991) (quotations and citations omitted); see also United States v. McClelland, 141 F.3d 967, 972 (10th Cir. 1998).  If a sanction is imposed it should be the "least severe sanction that will accomplish . . . prompt and full compliance with the court's discovery orders."  United States v. Peveto, 881 F.2d 844, 863 (10th Cir. 1989) (quotations

and citations omitted). Moreover, often it is the case that the party who requested disclosure has not been prejudiced and therefore no sanction is necessary. See United States v. Charley, 189 F.3d 1251, 1262 (10th Cir. 1999), cert. denied, 120 S.Ct. 842 (2000). Finally, the exclusion of an expert witness's testimony, as requested by Farmer, is almost never granted in the "absence of a constitutional violation or statutory authority for such exclusion." Id. (quotations and citations omitted).

In this case, with respect to witness Baker, the government turned over to Farmer, two days after his request, a statement that disclosed Baker's qualifications and the opinion he would render that the amount seized was consistent with an intent to distribute. Farmer also received notice of the factors Baker relied on to make this determination and his familiarity with the price of cocaine. The district court found this disclosure complied with its discovery order. Finally, Farmer failed to specify any significant hindrance to his preparation for cross-examination based on the alleged failure of the government, or what he would have done differently if he had the requested information. Considering that the trial court offered Farmer a one-week continuance, which he declined, we cannot say that the district court abused its discretion in admitting Baker's testimony.

With respect to witness Chapman, the government concedes that it failed to provide the basis of Chapman's conclusion–i.e., it did not describe the test used to conclude the substance was cocaine. However, the government argues that under the circumstances of this case the omission is harmless, and we agree. First, Farmer had known since his arrest in January of 1998, nearly four months prior to trial, that the government was claiming that the substance seized was cocaine. In addition, the trial court offered Farmer a one-week continuance, which he declined. In declining the one-week continuance and pushing for a one-month continuance, Farmer was unable to articulate a specific reason why a month's time was necessary. Finally, Farmer has consistently maintained both at trial and in argument to this court that the only issue in this case was whether Farmer had knowledge of the drugs. The issue of whether the substance found in the truck was actually cocaine was never a seriously contested issue at trial. Under these circumstances, we find that the district court did not abuse its discretion when it offered a one-week continuance and then, when Farmer declined this offer, allowed the expert testimony at trial.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge